ANDREW RAGOR *et al.*

*v.*

JOHN BRENOCK *et al.*

*Opinion filed October 24, 1898.*

1. PLEADING—*equity—party defaulted for want of answer cannot file cross-bill.* A party who has been defaulted for want of an answer cannot, of right, file a cross-bill.

2. SAME—*cross-bill must be consistent with matters alleged in the answer.* A cross-bill inconsistent with or antagonistic to the answer to the original bill is properly stricken from the files, and the subsequent amendment of the answer is of no avail if no attempt is made to re-file the cross-bill.

3. EQUITY—*when bill need not be treated as one purely for partition.* A bill filed by two of the heirs, asking that a certain deed of their ancestors be declared a mortgage and their right to redeem established, and which asks for a partition or division of the realty between complainants and such of the defendants as establish a valid title to the remaining interests, need not be treated as a bill for partition, requiring, as essential to relief, an ascertainment of the rights of the other heirs, made defendants, who failed to present their rights by appropriate pleadings.

4. CONVEYANCES—*one purchasing with notice of vendor's infirmity of title takes only his interest.* One purchasing an undivided half interest in land by a conveyance containing no covenant of warranty, and with notice that the deed by which the vendor acquired a one-third interest in the land was intended as a mortgage, takes only the vendor's interest, and, upon such deed being judicially declared to be a mortgage after the land has been re-sold, must account to the parties entitled to redeem for one-half the value of their interest in excess of the amount necessary to redeem.

5. APPEALS AND ERRORS—*chancellor's findings of fact not disturbed unless palpably erroneous.* The chancellor's finding, on conflicting evidence, that the vendor of a half interest in land was "in full possession of his mental faculties and capable of giving a legally binding assent to matters affecting his real estate," will not be disturbed on appeal, unless palpably erroneous.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

GEORGE B. FINCH, for plaintiffs in error.

SMITH, BLAIR & SMITH, for defendants in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed by Sophia Ragor and Anna Luce. The bill alleged the complainants were the daughters of one John Ragor, who died intestate on the 25th day of November, 1882, leaving surviving him the complainants and Elizabeth Ragor, his daughters, and Andrew Ragor, Peter Ragor, Frank Ragor and Jacob Ragor, his sons; that said deceased, on the 14th day of July, 1875, was the owner of the title to the undivided one-third of certain premises described in the bill by metes and bounds and government subdivisions, consisting of about three hundred acres of land situate in Cook county and known as the "Ragor farm;" that the title to the remaining two-thirds of said Ragor farm then rested in Peter Ragor; that on said last mentioned date the said John Ragor, being indebted to the said Peter Ragor in the sum of between $8000 and $10,000, for the purpose of securing such indebtedness executed and delivered to said Peter a warranty deed conveying to him all interest of the said John in and to the said land; that Peter afterwards intermarried with one Emeline Brenock, and afterwards, by a deed of trust dated November 19, 1887, said Peter and said Emeline, his wife, conveyed the entire premises so as aforesaid known as the Ragor farm to one John Brenock as trustee, by which trust deed said grantors thereof devoted the said land to the uses and purposes of the said grantors and their children according to the terms of a marital settlement entered into between them, in pursuance whereof the said deed of trust was executed. The bill charged the said Emeline had full notice of the fact that the said deed from the said John

to her husband, Peter, was in fact and effect but a mortgage; that the amount due and secured to be paid by the said deed operating as a mortgage had been paid by the rents and profits of the land which said Peter had received. The bill then stated the names of the heirs of the said John Ragor, deceased, at the time of his death, and also that Elizabeth, one of the children of the said John, had subsequently died leaving neither husband, child, children nor descendants of child or children, and set out the interest which descended to the complainants by virtue of their inheritance from their father and said Elizabeth, their sister, and also, in the same connection, showed the proportions in which the other children of said John, if otherwise entitled to a share in said alleged mortgaged premises, would inherit the same.

The prayer of the bill was that the said warranty deed executed by John Ragor to Peter Ragor should be declared to be a mortgage, and that the rights and interests of said two complainants, as heirs of said John Ragor, deceased, in and to the said land in the said deed described, should be ascertained and declared by decree of the court, and "that a partition or division of said realty should be made between your oratrixes and such defendants to the bill as should in the suit establish valid title to the remaining interests in the land." The bill named as defendants thereto the children of said John Ragor, (other than the complainants,) Emeline Ragor, wife of Peter, and John Brenock, trustee for Peter and Emeline, and other persons supposed to be interested in the premises who need not be here further named or designated.

Frank and Jacob Ragor were duly served with process but suffered default. Andrew Ragor filed an answer neither admitting nor denying the allegations of the bill, but denying that the complainants were entitled to the relief prayed for, or any part thereof. Peter Ragor filed an answer in effect admitting the allegations of the complainants' bill, and also filed a cross-bill, the purpose

whereof need not be further referred to at this time than to say it was designed to procure relief against his wife and John Brenock with relation to matters growing out of the execution of the trust deed to Brenock and the subsequent acts of the parties to that instrument. Emeline C. Ragor and the trustee answered the original bill and also the cross-bill filed against them, and answers were filed on behalf of all the other parties defendant, and the cause was, on the 12th day of March, 1891, referred to the master in chancery to take and report the testimony. Subsequently a decree was entered by consent of all the parties to the proceeding, authorizing the trustee, in whom rested the legal title to the entire premises, to sell the same to one Kemper K. Knapp, at and for the consideration of $140,000. The decree recited that the parties agreed the land could not be partitioned if decree for that relief should be awarded, and that they therefore ratified the sale to Knapp, and agreed that whatever rights any of the parties to the cause should be found to have in and to the lands should be transferred to and declared to vest in the proceeds of the said sale to Knapp, and that such proceeds should stand and be regarded as representing the interests of all the parties in the land, and the court so decreed.

On the 20th day of February, 1892, Andrew and Frank Ragor, without leave of the court first had and obtained, filed what they denominated a cross-bill, in which, in substance, they reiterated the allegations of the original bill, except they insisted Jacob Ragor, because of advancements made to him by his father, John Ragor, had no interest in the premises except such as he received by inheritance from his sister, Elizabeth Ragor, deceased, and prayed for partition and distribution to them of a proportionate part of the proceeds of the sale accordingly. On the 29th day of February, 1892, the cross-bill was ordered stricken from the files on the motion of the said Emeline Ragor and John Brenock, and a motion entered

by Frank Ragor to set aside the default as to him was denied. Leave was granted Andrew Ragor to amend the answer filed by him. Andrew amended his answer by striking out that portion which denied the complainants' right to the relief prayed for, and by adding thereto allegations confessing the complainants' right to recover according to the prayer of the bill.

On the 16th day of March, 1892, the cause came on to be heard upon the issues formed by the pleadings and upon the report of the master in chancery, and upon testimony, oral and documentary, produced in open court. The court found and decreed the said deed from John to Peter Ragor was but a mortgage given to secure the sum of $10,000 due from John to Peter, together with interest thereon at the rate of six per cent per annum from the 14th day of July, 1875, and decreed there should be allotted and paid to the complainants in the bill, Sophia Ragor and Anna Luce, out of the proceeds of the sale to Knapp, a certain specified sum which said complainants have accepted and are satisfied with, and to which no objection is made by any party to the proceeding. The decree made no provision for the payment of any portion of the proceeds of the sale to either said Andrew, Frank or Jacob Ragor, and of this they complain and seek reversal of the decree by this writ of error.

It appeared from the proofs that the indebtedness to secure which the said John Ragor executed the conveyance in question, was that of his son Jacob. The amount of this indebtedness exceeds by far any possible interest of the said Jacob Ragor in the proceeds of the sale of the land, hence no wrong was done Jacob by the decree.

The primary purpose of the bill was to procure a declaration of the court that the deed from John to Peter Ragor was but a mortgage, and for a decree authorizing complainants, Sophia Ragor and Anna Luce, to redeem their interests in the land therefrom. The secondary purpose was to obtain an allotment of their interests after

the deed should be declared a mortgage and a redemption therefrom made. The bill alleged that the complainants thereto, Sophia Ragor and Anna Luce, had repeatedly applied to Peter Ragor to convey to them their just share of said premises; that said Peter had frequently admitted the legality and equity of their claims, and delayed them by promises that they should have and enjoy all their rights and equities in the premises; that in August, 1889, said Emeline Ragor, and the other parties holding title for her as her trustees, arranged for the execution by the said Emeline Ragor of three promissory notes to be executed by Emeline Ragor and secured by deed of trust upon the premises in question, to be delivered to the said complainants in discharge of their claims and rights in the said premises, but that such adjustment of their interests was not concluded. The bill also negatived any imputation of *laches* on the part of the said complainants to the bill, and disclosed a right in the complainants to the bill to recover, based, in part at least, upon circumstances peculiar and personal to them, and to an extent distinct and independent in its character from any right of the other heirs of the said John Ragor, deceased. The bill did not purport to have for its purpose the recovery of the interests of any other persons than the complainants therein, nor were the rights and interests of the other persons set forth in the bill, except in so far as such would incidentally and necessarily appear historically in the statement of the rights and claims of the complainants. The complainants did not assume to declare that the other heirs of their father were still entitled to the same rights which they claimed or that the other heirs desired to engage in litigation to secure any rights in the land, but framed the bill upon the theory that the rights and interests of all other persons should be determined by the court. The complainants had not the power to force their brothers, plaintiffs in error, to join with them in contesting the question

whether the said deed was in fact a mortgage, and did not assume such power, but made the said plaintiffs in error defendants to the bill, and all other persons known to have, or claim to have, any interest in the premises, and prayed "that a partition or division should be made of the several parcels of land comprising said real estate above described, between your oratrixes and those of the defendants above named who shall in this suit establish valid title thereto, respectively, according to their respective rights and interests therein."

Plaintiff in error Frank Ragor did not answer the bill, but was defaulted. Andrew Ragor filed an answer denying the complainants were entitled to the relief prayed for, and, so far as the plaintiffs in error Andrew and Frank Ragor were concerned, the cause was submitted, on the 9th day of February, 1891, to the master in chancery for proofs upon this state of pleading. The cause was pending before the master until the 16th day of March, 1892, and while it was so pending, and but a few days before the proofs taken before the master were reported, the said Andrew and Frank, without having sought or obtained leave of the court so to do, placed upon file an instrument which they denominated a cross-bill. This pleading was, by order of the court, stricken from the files, and neither of the plaintiffs in error sought permission of the court to re-file the same. Its allegations were in direct contradiction to the allegations of the answer filed by Andrew. A cross-bill must be founded upon matters of defense stated in the answer to the original bill. (2 Barb. Ch. Pr. 129; *McDonald* v. *Daugherty,* 14 Ga. 679.) When, as here, a cross-bill is inconsistent with and antagonistic to the answer it may be properly stricken from the files. Andrew subsequently obtained leave to amend his answer, and did amend it by striking out the averments denying that complainants had any right of recovery, and adding as follows: "and confesses to complainants' right to recover under the prayer of the

'bill." But after so amending the answer no effort was made to obtain leave to reform the cross-bill or to re-file the same.

When the cross-bill was filed Frank and Jacob Ragor were in default. After the cross-bill had been stricken Frank moved the court to set aside the default as to him, but did not advance any reason in aid of the motion or otherwise support it, and the motion was overruled. A party who, for want of an answer, has been defaulted has no right to file a cross-bill. (Rev. Stat. sec. 30, chap. 22, entitled "Chancery.") Jacob did not join in the cross-bill or seek to have the default as to him set aside. Moreover, when this cross-bill was filed the cause had been at issue and referred to the master for more than a year, and the parties had taken the proof before the master. The cause was ready for hearing, and the cross-bill would, had it been filed, have necessitated further pleading and further delay to the complainants. Therefore the court, in view of the situation and in view of what has been hereinbefore said with reference to the cross-bill and to the rights of the parties to file the same, did not err in striking the cross-bill from the files.

It is, however, urged the original bill should be deemed and treated as a bill for partition, and that in such proceedings the statute requires the court to ascertain and declare in its decree the rights, titles and interests of all the parties, and give judgment accordingly. As we have remarked hereinbefore, the primary purpose of the bill was to have a deed absolute upon its face declared to be a mortgage and the rights of complainants to redeem therefrom judicially declared, and the prayer for partition was added because of the equitable rule that a court of chancery, having obtained jurisdiction for the purpose of rendering a certain character of relief, may retain the case for the purpose of affording additional relief to which the party has become entitled by reason of being the recipient of the primary relief. But here the plaintiffs

in error, who complain they were not accorded relief by way of partition, were unwilling to join, and did not join, in invoking the aid of the court to grant, in their behalf, relief against the deed or to establish in them a right to redeem from it. Whether they desired to have the deed regarded as a mortgage and to have the right to redeem therefrom was a matter for their determination, and for the employment upon their part of the appropriate and proper pleadings and procedure to bring their rights before the court for determination. The application to have the deed declared a mortgage was not made until some fifteen years after the execution of the deed. The complainants in the original bill negatived all imputation of *laches* or acquiescence, and averred express promises that their rights should be fully preserved. It does not necessarily appear from the record that the said plaintiffs in error, Andrew, Frank and Jacob, or either of them, were entitled to the same relief by way of partition of the proceeds of the sale of the land as was decreed to their sisters, the complainants in the bill.

It only remains to be determined whether the plaintiff in error Peter Ragor has any just ground to complain of the action of the court. It appeared from the pleadings and proof that the married life of the said Peter and his wife, Emeline, was so unhappy that they determined to live separate and apart, and that they entered into a voluntary agreement that the wife should have the care and custody of the children, (the number, sex or ages of whom are not disclosed by the record,) and that the husband and wife should convey to John Brenock, as trustee for the parties, the entire tract of land known as the Ragor farm, and that in pursuance of such agreement the said Peter and wife, on the 19th day of November, 1887, (about three years before the filing of the bill,) executed and duly acknowledged an instrument conveying the said farm to John Brenock, father of said Emeline. This deed, after reciting the fact that the grantors

are husband and wife, and because of the differences between them were unable to live together happily and had voluntarily agreed to live separate and apart, recited further as follows: "And whereas it is agreed by the party of the first part to give to said party of the second part a one-half interest in all property now owned by him, which one-half interest in said property to be received by her in full satisfaction of all claim or claims which she has or may have against him or his property for the support of herself or of the children of the said marriage." This recital was followed by a conveyance of all said Ragor farm to the said Brenock in trust, upon conditions which need not be here particularly specified, further than to say the trust was for the benefit of the husband and wife. The deed contained the following provisions: "And upon the further trust, upon the request of the said parties of the first and second part made to him in writing, to convey said premises to said parties for such price and upon such terms of payment as they, by said written request, shall direct; and upon the further trust, that when either of the said parties of the first part or second part requests, in writing, a sale of said premises, and has a purchaser therefor for a given price and upon given terms, then to convey the said premises to said purchaser for said price and upon said terms, unless the other of the said parties shall, within sixty days thereafter, purchase the interest of the one desiring to sell at the price and upon the terms of the proffered sale; and upon any sale of said premises the said trustee, after paying all expenses of the sale, will divide the purchase money equally between the parties of the first and second parts hereto, and after deducting from each share any money due him by virtue hereof, then to pay the balance to the respective parties, as herein entitled." It further appeared that Brenock accepted the trust, entered into possession of the land and proceeded to execute the provisions of the trust deed.

On the 1st day of May, 1889, the said Peter addressed a note to the said John Brenock and his said wife, Emeline, enclosing an offer of another party for the purchase of the Ragor farm at and for the sum of $54,000, upon specified terms of payment, and notified them that he desired the offer should be accepted and the premises sold at that price, or that his interest in the farm should be purchased by them at the same price and upon the same terms and conditions. The wife elected to purchase the interest of the husband, and having complied with the terms of the sale the land was conveyed to one John Coughlin, to be by him held as trustee for the said Emeline. The said Emeline paid to the said John Brenock the amount required to be paid in cash according to the terms of the sale, and notes for the deferred payments were executed by her, secured upon the land. The trustee, Brenock, paid moneys out of said purchase price, from time to time, to the said Peter and to others for his use, and held said notes in his possession at the time of the institution of this suit, and the notes, together with a report of the payments made to the said Peter or for his use, were filed with the court as a part of the files of the cause, under an order made by the court with reference thereto. The court by its decree adjusted the accounts between the said Peter and the said John Brenock, and decreed that Peter was entitled to receive, and should be paid out of the proceeds of the sale to Knapp, the sum of $8929.04, as being the balance due him.

A number of complaints are preferred against the adjustment thus made by the court. In this respect it is first contended, that at the time Peter demanded that the farm should be sold at the sum of $54,000 or that his interest therein should be purchased at that sum proportionately, Peter, by reason of excessive indulgence in intoxicating liquors, had become and was mentally incapacitated to transact business, and that the said wife, Emeline, and the said John Brenock, well knew this. The

insistence is, therefore, that the said Peter should not be bound or concluded by the sale of his one-half interest in the farm to his wife for the sum of $27,000, as the court decreed he should, but should be deemed the owner of the undivided one-half thereof at the time of the sale of the farm to Knapp, and therefore entitled to receive one-half the sum paid by Knapp for the farm, to-wit, the sum of $70,000, less sums disbursed to or for him by the said John Brenock.   The trial court found, and recited as one of the findings of the court, that the said Peter, at the time in question, "was in full possession of his mental faculties and capable of giving a legally binding assent as to matters affecting his real estate."   We find testimony in the record tending at least to show that his mental faculties had been somewhat impaired, but there was testimony to the contrary, and the correct solution of the question was dependent upon a variety of considerations, as to the weight and merit of which the chancellor had superior facilities to those enjoyed by us for arriving at a correct conclusion.   After a thorough consideration of all the testimony bearing upon this point, and much reflection thereon, we are unable to say that we have a clear conviction as to the truth of the matter, or that we would be justified in declaring that the chancellor was clearly and palpably in error in his judgment thereon.   In such state of case we have repeatedly held the finding of the trial court should be accepted and acted upon by this court. (*Higgins* v. *Wisner*, 170 Ill. 220, and cases cited.) The refusal of the court to adjudge that said Peter should not be bound by the sale of his interest of the land at and for the price of $27,000 cannot, therefore, be declared to be error.

But we think the court erred with respect of another item for which Peter was required to account. The court decreed the complainants in the original bill, Anna Luce and Sophia Ragor, were entitled to receive out of the proceeds of the sale of the land to Knapp the sum of $9111.80,

such being the amount of their interest in the said one-third part of said land after the deduction of the amount necessary to redeem their interest in the land, upon the theory that the deed of said one-third to said Peter by his father, John Ragor, was but a mortgage. The court charged this sum of $9111.80 in the statement of the account of the said Peter as an item of indebtedness of the said Peter, and deducted the same from the amount which otherwise would have been decreed to be paid to the said Peter. In making this charge to Peter the court proceeded upon the theory that Peter should be deemed to have warranted to his wife that he was seized of a good, complete and unincumbered title in fee to the lands, and that as it appeared his claim to a portion thereof was but that of a mortgagee, he should be required to account for a sum sufficient to make perfect and good the title to the farm. The deed executed by Peter to the trustee contained no covenant of warranty, and was executed, as it expressly averred, only for the purpose of giving to the wife a one-half interest in all the property the husband owned. The chancellor announced his finding and conclusions orally, and thus directed a decree to be framed. We learn from this oral announcement, which is preserved in the certificate of evidence, that the chancellor found that Mrs. Emeline Ragor, before execution of the deed to the trustee, Brenock, had full knowledge and notice of the character of the deed executed by said John Ragor to her husband, and was fully advised as to the rights of the complainants, Sophia Ragor and Anna Luce. Moreover, we find that fact abundantly established by the proof. Mrs. Emeline Ragor therefore was not deceived or imposed upon in any manner. She knew that by the settlement with her husband she obtained but one-half of whatever right he had in the farm, and she had full knowledge of the infirmity which affected alike the interest of herself and that of her husband. In

every equitable point of view she was the owner of but
the undivided one-half of the interest possessed by her
husband, and her undivided one-half was subject, equally
with his, to the defect of which they both had knowledge.
When she purchased his one-half of the land for $27,000
she knew she was thereby obtaining only such interest
as he had in an undivided one-half in the land, she being
then the owner of the like interest in the other undivided
one-half. In good conscience all she could require at
the hands of her husband is, that he should account for
a sum sufficient to make good to her an undivided one-
half interest in the land. The court, therefore, should
not have charged as against Peter the full amount de-
creed to be paid to Anna Luce and Sophia Ragor, viz.,
$9111.80, but only the one-half thereof, viz., $4555.90, for
the amount necessary to pay the other one-half should
have been borne by Mrs. Emeline Ragor. The court,
aside from the item of amounts paid to Anna Luce and
Sophia Ragor, found that Peter should receive the sum
of $18,040.84. From this sum should be deducted the
sum of $4555.90, (being one-half the amount decreed to be
paid said Anna Luce and Sophia Ragor,) which would
leave to be paid to Peter the sum of $13,484.94, instead of
the sum of $8929.04, as found and decreed by the court.

The decree of the court, so far as it disposes of the
rights of Andrew, Frank and Jacob Ragor, is affirmed.
As to Peter the decree is reversed and the cause re-
manded, with directions to the court to re-state the items
of the account of said Peter in accordance with the views
herein expressed and to enter a decree awarding him the
said sum of $13,484.94. In all other respects the decree is
affirmed. The costs in this court shall be paid as follows:
One-half by Mrs. Emeline Ragor, and the other one-half
by Andrew, Frank and Jacob Ragor.

*Decree affirmed in part.*