BLANCHE DREW *et al.* Appellees, *vs.* LULU DREW, Appellant.

*Opinion filed December 22, 1915—Rehearing denied Feb. 3, 1916.*

1. PRACTICE—*rule for closing testimony not intended to bar litigants.* A motion to extend the time fixed by a rule for the closing of the defendant's testimony before the master in chancery is addressed to the discretion of the court, which should be exercised in the furtherance of justice and not to bar litigants from the fair presentation of the issues in the cause.

2. SAME—*time when negotiations for compromise were pending should not be charged against party.* The compromise of controversies is looked upon with favor by the courts, and the time lost during the pendency of negotiations for the settlement of a chancery suit and by reason of the defendant's subsequent illness and a misunderstanding with her attorneys should not be charged to the defendant so as to bar her right to an extension of the rule for taking her testimony before the master in chancery.

3. SAME—*motion to extend time for taking testimony need not name the witnesses.* Where a motion by the defendant in a chancery case for an extension of time for her to take her testimony before the master is based upon an affidavit setting up the reasons for the delay in taking the testimony and states the substance of the defense she expects to be able to prove by her witnesses, it is not necessary that the names of such witnesses be stated.

4. SAME—*when affidavits against allowance of motion will not be considered on appeal.* Affidavits against the allowance of a motion to extend the time for the defendant to close her testimony before the master in chancery, which were not filed for several weeks after the court had ruled on the motion and hence were not

before the court when the ruling was made, will not be considered by a court of review.

5. SAME—*application to amend answer is addressed to sound discretion of the court.* While the court may, in its discretion, permit an answer to be amended by the making of allegations inconsistent with the original answer, yet the defendant has no absolute right to file such amendment and the application is ad-dressed to the sound discretion of the court.

6. SAME—*what should be shown where inconsistent amendment is sought to be made at late date.* Where it is sought on the eve of a hearing in a chancery case, after the taking of evidence and the report of the master, to set up, by amendment, a new defense inconsistent with the issues already made, requiring the taking of additional evidence and perhaps a continuance of the cause, the court ought to be informed not only whether the facts constituting the new defense were known to the defendant when the original answer was filed, but also whether they constitute a defense.

7. SAME—*court will not delay hearing to allow filing of cross-bill.* The filing of a cross-bill at a proper time is a matter of right, but the court need not permit the filing of a cross-bill which· has been delayed until the cause stands for final hearing.

APPEAL from the Circuit Court of Douglas county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

CHARLES C. LEFORGEE, THOMAS W. SAMUELS, and STANLEY L. POGUE, for appellant.

W. W. REEVES, and HERRICK & HERRICK, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Blanche Drew on December 8, 1913, filed a bill in the circuit court of Douglas county against her mother, Lulu Drew, and her sister, Vivian Drew Means, for the partition of 324 acres of land. The tenant residing on the premises and the husband of Vivian Drew Means were made parties but they have no interest in the controversy regarding the title. The complainant in her bill alleged that she was the

owner in fee simple of an undivided one-half of the premises, and sought to have set aside a deed executed by her to her mother on October 18, 1908. Vivian Drew Means answered the bill substantially admitting its averments, and filed a cross-bill, in which she alleged that she was the owner of the other undivided one-half of the land and sought to have canceled a deed made by her to her mother on June 6, 1907. The bill and the cross-bill were twice amended and Lulu Drew answered them in August, 1914, and the cause was referred to the master in chancery. On November 12, 1914, evidence was taken before the master on behalf of the complainants in the bill and cross-bill, including their own testimony, and the taking of evidence was adjourned until a later date, of which notice was to be given to the defendant by counsel for the complainants. On January 23, 1915, a rule was entered by the court requiring the complainants to close their evidence by January 30, the defendant by February 13, and the complainants their evidence in rebuttal by February 20. Pursuant to notice which had previously been given, the parties, with their attorneys, appeared before the master on January 25 for the purpose of taking evidence, but no evidence was taken then or at any subsequent time. Negotiations for a settlement were carried on for a time but without result. On the first day of the March term, 1915, the defendant presented a motion for an extension of the time for taking evidence, but the motion was overruled. The master presented his report, based on the testimony taken before him, finding the issues in favor of the complainants and recommending a decree in accordance with the prayers of the bill and cross-bill. Exceptions to this report were overruled and a decree of partition setting aside the two deeds was entered, from which the defendant, Lulu Drew, has appealed.

The denial of the defendant's motion for an extension of the rule for the introduction of her evidence before the master has been assigned as error and is the only question

271 — 16

material to be determined on this appeal. This motion was based on the affidavit of the defendant, which set forth, in addition to what has been stated, that when the parties met before the master in chancery on January 25, 1915, their counsel entered into conversation in regard to the compromise of the litigation, and for the purpose of bringing about such compromise the taking of testimony was discontinued by agreement and the day was spent by the attorneys for the respective parties in consultation with reference to such compromise. In the evening the defendant was requested by the complainants' attorneys to go the next day to Mattoon, where one of her attorneys resided, to see if the suit could not be compromised. The defendant consented and did go to Mattoon the next morning, where, after further negotiations, the defendant understood a certain agreement was to be drawn for the settlement of the matters in dispute as discussed by the attorneys, which agreement was to be submitted to the defendant for her signature. She thereupon returned home, and that was the last meeting between the parties to the litigation. She was not informed of any other testimony sought to be taken by the complainants nor that they had concluded the introduction of their testimony. The defendant did not approve the terms of settlement as they were finally submitted to her. She could not state the exact date on which the draft of the proposed compromise agreement was submitted to her, but according to her best recollection it was about a month prior to the time of making her affidavit on March 6. Upon examining it she concluded that she could not sign the agreement and so informed her attorneys. About two weeks later, on February 22, 1915, the papers in regard to the settlement were again sent to her by one of her solicitors to be signed, who advised her that in the event she did not sign them her solicitors who had before represented her in the cause would withdraw from the suit; that her solicitors felt that the case was settled fairly and squarely and that defendant had

agreed to the settlement, and that if she did not carry it
out that they would not be embarrassed by remaining in the
case. The defendant disagreed with the statement of her
attorneys. Her understanding of the compromise was not
the same as that embodied in the written instrument, and,
notwithstanding her confidence in her attorneys, she did not
believe the settlement was one that she could make or had
agreed to make and she therefore declined to sign the in-
strument. At that time, and for about a week afterward,
defendant was sick and confined to her bed, during which
time, on March 1, a notice was served upon her by the solic-
itors for the complainants that they would on March 3 ap-
pear before the master and ask that he make a report in
said cause. She sent word to the master informing him of
her illness and inability to come to Tuscola or make ar-
rangements to have anyone appear for her, and the master
sent a message to her that on account of her illness noth-
ing would be done on that day. The defendant had no
other notice of any date being set for the hearing and soon
after employed the solicitors who now appear for her, who
thereupon prepared her motion for an extension of the rule.
The affidavit further stated that the defendant had heard
the testimony of the complainants, and that so far as it
affects the execution of said deeds and the various conver-
sations in relation to the making of the deeds and the cir-
cumstances under which the deeds were made their testi-
mony was not true, and that if given an opportunity to do
so the defendant would introduce testimony establishing
that the deeds were not made under the circumstances al-
leged in the bill and cross-bill nor as claimed in the testi-
mony of said witnesses, and she would introduce testimony
to prove that the allegations in her answer were true; that
she had eight or ten witnesses upon the issues in the case
to sustain the allegations of her answer and to prove that
the matters and things therein contained were true and to
dispute and disprove the allegations in the original bill and

cross-bill. No evidence was introduced opposing the showing made by the affidavit of the defendant.

The cause was heard on the evidence of one side only. The defendant, though she had material testimony in her favor, according to her showing was not permitted to introduce it. The question for determination is whether she has shown sufficient excuse for not having introduced it sooner. The issue in the case was whether the mother, occupying a fiduciary relation to her two daughters, who were totally inexperienced in business and claimed to be ignorant of their ownership of the land and of their rights, had betrayed their confidence and improperly procured them, immediately after their arrival at their majority, to convey the land to her without consideration. The pleadings raised the question, and the evidence taken on the part of the complainants tended to maintain their side of the issue. It was, of course, vital to the defendant to produce the evidence (which she states in her affidavit was within her power) to show that the testimony of the complainants was untrue and to maintain her side of the issue. There was no necessity for the defendant showing any reasons for not having taken her testimony before January 30. Until that time the complainants had not closed their evidence. Until they did so there was no necessity for the defendant taking any evidence. Whether the burden of proof was on her or not, the taking of evidence on the part of the complainants was essential, because the question of the number of children of their father was a material question which was disputed by the pleadings in the case, and until the proof on that question was made the cause was not ready for hearing. When the time fixed by the rule for closing the complainants' testimony expired, negotiations for a settlement of the litigation were in progress, and soon afterwards the parties seemed to have agreed upon the terms of settlement. When they were reduced to writing, however, the terms did not meet with the defendant's approval and she was unwilling

to consent to them. At this time one-half of the time for taking her testimony under the rule had expired and only a week remained. There was a disagreement between her and her attorneys as to the settlement of the cause, which resulted in her attorneys' withdrawal from the case, and when she was informed of this the time for taking her testimony had expired and she was sick in bed and unable then to employ other counsel. As soon as she was able to do so she did employ her present counsel, and at the first opportunity when the court was in session a motion was made in her behalf to extend the rule so as to permit her evidence to be received. This application was addressed to the discretion of the court, which was not an arbitrary but a sound legal discretion, to be exercised in the furtherance of justice,—not to bar litigants from the fair presentation of the issues in the cause, but to give to each party a full opportunity fairly to present the law and the facts to sustain his claim or his defense. A party may lose this opportunity by his own neglect, and therefore the question to be determined here is whether the appellant has been guilty of such negligence as should prevent her from having a hearing. The compromise of controversies is looked upon with favor by courts. While negotiations looking to the settlement of this suit were in progress neither party would be expected to go on with the taking of evidence and preparation for a hearing which the parties were then seeking to make unnecessary. A reasonable delay during the pendency of the negotiations was proper. When a settlement was finally submitted to defendant, according to her showing to the court it did not represent what she had agreed to and she refused to sign the agreement. The time lost by reason of the misunderstanding between her and her attorneys cannot be charged against her. It cannot be assumed, contrary to her affidavit, that she made the agreement contained in the instrument presented to her or that she was not in the exercise of good faith in the negotiations for the set-

tlement. These negotiations and the misunderstanding with her attorneys and her illness consumed more than all the time given her for the taking of her evidence, and they furnish a sufficient reason why, without her fault, the evidence was not taken. She was not bound then to give notice and attempt to take her evidence before the master, because, the time for taking evidence having expired, the master was no longer authorized to take it and the complainants were no longer bound to attend.

Counsel for the appellees argue that the defendant delayed the progress of the suit from the beginning; that they were endeavoring to take their testimony and were not responsible for any of the delay in the cause; that these matters were all within the knowledge of the chancellor and were properly taken into consideration by him in the determination of the motion. The record shows that it was eight months from the time the bill was filed until the cause was referred to the master; that the bill and cross-bill were twice amended, the second time on August 6, 1914, when the cause was referred. The complainants took no testimony for three months and never notified the defendant that they had closed their testimony. There was nothing to prevent them at any time from giving notice and proceeding with the taking of their evidence before the master. If they chose to delay because of the possibility or probability of a compromise which was not effected, they cannot throw the responsibility on the defendant and insist upon charging her with the delay caused by the failure of the compromise.

It is argued that there is no showing of the names of the witnesses and the facts to which they would testify. But this is not necessary. The appellant was not asking for a continuance but only for an opportunity to present her evidence in the case. The motion was made on the first day of the March term, and if granted she might easily have obtained her testimony and had the same ready to

submit by the time the cause was finally heard on April 17, at the same term.

On April 17 the appellant moved the court for leave to amend her answer and file a cross-bill. The title of the complainants rested upon a deed made by James Drew to their father, Alfred F. Drew. The execution of this deed was averred in the bill and cross-bill and was admitted by the answer. The amendment which the defendant desired to make in the answer was a denial of the delivery of the deed, and the cross-bill was based on the failure to deliver the deed and asked for its cancellation. This motion was supported by the affidavit of the appellant that as soon as she had employed her present counsel they had made an investigation of the cause and of the various deeds involved affecting the title to the land, and after a thorough investigation and examination of the records and divers interviews with many persons having knowledge of the deeds, had informed the defendant that such investigation disclosed that the deed of James Drew to Alfred F. Drew was never delivered, in law or in fact. The affidavit further stated that the defendant was not informed of this fact when she filed her answer to the amended bill and cross-bill and was therefore unable to avail herself of such information. The motion was properly denied. While the court may, in its discretion, permit an answer to be amended by the making of allegations inconsistent with the original answer and setting up an inconsistent defense or an additional defense, yet the application for that purpose is addressed to the discretion of the court. A party has no absolute right to file an amendment to an answer under such circumstances. The court has the right to know the facts constituting the defense sought to be set up. The answer which it was sought to file merely denied the delivery of the deed. The affidavit set forth no fact ascertained by the defendant's attorneys of which she was ignorant when the original answer was filed. The averment is that their investigation

disclosed that the deed of James Drew to Alfred F. Drew was never delivered, either in law or fact. This is merely a conclusion of law to be deduced from facts ascertained. The affidavit fails to set forth a single fact. If it is true that the investigation disclosed that the deed was never delivered, that conclusion must have resulted from the consideration of facts ascertained which would be testified to by the witnesses, but no such fact is stated in the affidavit. Where it is sought on the eve of a hearing, after the taking of evidence and the report of the master, to set up a new defense inconsistent with the issues already made, requiring the taking of additional evidence and perhaps a continuance of the cause, the court ought to be informed, in exercising its discretion, not only whether the facts constituting the new defense were known to the defendant at the time of filing the original answer, but whether they were such facts as constituted a defense. It was a proper exercise of discretion in the court to refuse permission to amend the answer. The filing of a cross-bill is a matter of right, but the court will not delay the hearing to permit the filing of a cross-bill which has been delayed until the cause stands for final hearing.

On April 17 there were also heard by the court and filed, affidavits by Blanche Drew and Vivian Drew Means in resistance of the motion which the court had decided on March 8 for an extension of the rule to close the evidence. They are included in the certificate of evidence but they can not be considered. They were not made until six weeks after the motion was decided, were not then before the court, and, of course, formed no basis for its action.

The decree will be reversed and the cause remanded to the circuit court. The defendant will have the right to ask leave to amend her answer, which upon a proper showing for that purpose should be granted.

*Reversed and remanded.*