Joseph Sleichert and Jozefa Sleichert, Appellees, v. Joseph C. Turek, Appellant.

Gen. No. 34,751.

Heard in the first division of this court for the first district at the October term, 1930. Opinion filed December 22, 1930.

FRANK H. NOVAK, for appellant.

Edward J. Bohac, for appellees.

Mr. Justice McSurely delivered the opinion of the court.

Defendant appeals from a decree entered pursuant to complainants' bill enjoining him from prosecuting a suit at law against complainants on a note for $3,500 made by them.

Bill, answer and replication were filed and the cause referred to a master in chancery who heard the evidence and returned the same with his conclusions. Exceptions to the report were overruled and a decree entered following the recommendations of the master. The decree recites the salient facts.

January 19, 1926, complainants, owning certain real estate, executed their trust deed to the Cicero Trust & Savings Bank conveying the premises to secure the payment of their note for $3,500, payable to the order of themselves and by them indorsed, due five years after date, with interest at 6 per cent per annum. (This note was later bought by the defendant and is the subject matter of the decree enjoining him from suing at law to collect it.) Complainants sold the premises to Stefan Sadlon and wife subject to this trust deed. As part of the purchase price Sadlon and wife gave their note for the sum of $3,300, payable to the order of themselves and by them indorsed and delivered, due 18 months after date, with interest at 7 per cent per annum, secured by a trust deed on the premises. Thereafter complainants sold to the defendant this second mortgage note and delivered it with the trust deed. Defendant later foreclosed this second mortgage and bid in the premises for $2,100, and received a master's certificate of sale. Thereafter defendant purchased from the Cicero Trust & Savings Bank the $3,500 first mortgage note executed by complainants. Default was made by Sadlon and wife in the payment of interest on the first mortgage note and

defendant commenced an action at law on this note against the complainants. Thereupon complainants tendered to defendant the amount due on the note with interest and costs and demanded of defendant the delivery of the principal note and trust deed securing the same uncanceled, which defendant refused to surrender. Complainants then filed this bill and deposited the sum of $4,200 with the clerk of the circuit court and a temporary order was entered enjoining the defendant from prosecuting his action at law.

The decree found that said sum of $4,200 so deposited represented the amount due on the principal note of $3,500 with interest; that, when complainants sold the premises to Sadlon and wife the purchasers were given credit in the sum of $3,500, the amount of the note in question, on account of the purchase price of the premises, whereby said Sadlon and wife became and were obligated to pay said principal sum of $3,500 with interest; that by reason of the default of said Sadlon and wife as to said principal note and interest, it became the obligation of complainants, as makers of the note, to pay the same and upon payment complainants were entitled to receive all the security given for said debt. It was therefore ordered that defendant surrender uncanceled the said note with unpaid interest notes, together with the trust deed, to the clerk of the court, who should thereupon pay to defendant the amount due thereon, and it was ordered that defendant be perpetually enjoined from in any manner prosecuting his suit at law against complainants and he was enjoined from in any manner impairing or discharging the $3,500 note or releasing the same.

When complainants sold the property to Sadlon and wife the Sadlons become the principal debtors and the complainants sureties and the mortgaged property became the primary fund for the payment of the debt. In *Fish v. Glover,* 154 Ill. 86, it was held under similar circumstances that, where the mortgagors had con-

veyed the property and desired to foreclose the mortgage, if they were not then holders of the note and mortgage, they should, as sureties of the grantee, have paid the debt to the holder of the note and mortgage and they would then have been subrogated to the holders' rights in the security, the opinion saying: "It is upon the payment of the debt by the surety, that he becomes entitled to be subrogated to the rights of the creditor. When a surety pays off the debt, equity transfers to him all the securities held by the creditor, but the creditor cannot be deprived of his security until the debt, for which it is pledged, is extinguished. . . . The surety can pay the debt the moment it becomes due, which is doing no more than he agreed to do, and immediately resort to the principal for reimbursement. . . . Where the owner of land sells it subject to mortgage executed by himself, the land in equity becomes the primary fund for the payment of the debt, and the vendor occupies the position of surety, and, upon payment of the mortgage debt, is entitled to be subrogated to the rights of the creditor the same as any other surety."

This rule was followed in *Howard v. Burns,* 279 Ill. 256, where it was held, as between the mortgagor and his grantee, the mortgagor stood in the relation of a surety and "Had a right to pay notes for which he was personally liable as they came due, and the property became a primary fund for the payment of the debt, so that Shaw (the mortgagor) was entitled to be subrogated to the rights of the creditor . . . and he would have a right to foreclose the trust deed for his own benefit." Citing many cases. See also Jones on Mortgages, vol. 2, sec. 1121; Pomeroy on Equity Jurisprudence, vol. 3, 4th ed., sec. 1205, p. 2874; *Comstock v. Hitt,* 37 Ill. 542; *Fowler v. Fay,* 62 Ill. 375; *Flagg v. Geltmacher,* 98 Ill. 293.

This is a reasonable rule of equity. In the instant case, it appearing that defendant has assigned the

master's certificate which he received upon the fore-closure of his second mortgage and having received full value therefor, if he were permitted to maintain his action at law on the first mortgage note and obtain a judgment against the complainants and should he proceed to cancel the note and disregard the lien of the first mortgage, the assignee of the certificate would acquire the premises merely for the amount he had paid to defendant and the complainants would be deprived of the right to look to the premises as the primary fund out of which their debt might be paid.

*Rogers v. Meyers,* 68 Ill. 92, cited by defendant, is not controlling. In that case the mortgagor, who sought to have the holder of the note enjoined from prosecuting a suit at law upon a note made by him, made no offer or tender of payment but asked that the prosecution be perpetually enjoined. Complainant in that case also made allegations of fraud which, it was held, were not proven. Defendant also cites *Knoblauch v. Fogelsong,* 38 Minn. 459, but that case is readily distinguished on the facts. There, the mortgagors in first and second mortgages sold both to the same holder and, while recognizing the doctrine of subrogation, it was held that it would not be equitable under the circumstances to permit the mortgagors to be subrogated to the rights of the holder under the first mortgage who also held the second, unless the mortgagors paid both mortgages; the opinion saying that to grant subrogation on any other terms would compel the holder of the second mortgage, in order to protect it, to pay off the first mortgage to the very party who was legally bound to pay the second.' That case is not applicable here. The instant decree followed the well established practice and was proper.

Defendant complains of the order of the court striking his cross-bill from the files. The record shows that on March 19, 1929, the cause upon bill, answer and replication was referred to a master in chancery and

thereafter hearings were had until May 17, 1929, when proofs were declared closed. On January 3, 1930, or nearly seven months after the proofs had been closed, defendant without leave of court filed his cross-bill, setting up substantially the same facts as he had set forth in his original answer and praying for an accounting. Subsequently, on January 20, the court struck the cross-bill from the files. It has been the long established practice that a defendant desiring to file a cross-bill must act with due diligence and file the same without unreasonable delay with a view of having it heard with the original bill. A denial of a motion to file a cross-bill after the proofs before the master are closed under the circumstances was no abuse of the discretion of the chancellor. *Kelsey v. Clausen,* 257 Ill. 402; *Drew v. Drew,* 271 Ill. 239; *Howison v. Ruprecht,* 121 Ill. App. 5.

We find no error in the record and the decree is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.