**Pauline Field et al., Appellants, v. Cleo Bittner et al., Appellees.**

**Gen. No. 8,421.**

348

Opinion filed August 25, 1932.

HAMILTON, BLACK, HOLTGREVE & KLATT, for appellants Pauline Field, William A. Pfeiffer, Jr., and Elsie Risser, administrators with the will annexed to the last will and testament of W. A. Pfeiffer, Sr., deceased; Pauline Field, William A. Pfeiffer, Jr., Elsie Risser, Ernest H. Pfeiffer and Raymond R. Pfeiffer.

RIDGELY & RIDGELY, for appellant Washington Land Co.

RALPH DEMPSEY, P. A. D'ARCY, C. S. TOWNLEY, WAYNE C. TOWNLEY and LOUIS L. WILLIAMS, for appellees Cleo Bittner, Nettie C. Chaffer, Dorothy Rickman, Frederick Rickman and Sophia Rickman.

C. R. BIRKETT, for appellees Perry A. Birkett and Lester P. Birkett, administrators of the estate of George Birkett, deceased.

GEORGE W. HUNT and J. EDWARD RADLEY, for appellee Rae C. Heiple, Receiver of Henry Denhart & Co.

MR. JUSTICE JETT delivered the opinion of the court.

It appears that on February 18, 1925, W. A. Pfeiffer, Sr., and wife conveyed to Henry Denhart, trustee, certain lands and premises in Knox county in trust for the purpose of securing the payment of five certain principal promissory notes of $5,000 each, executed by said W. A. Pfeiffer, Sr., and payable to the order of himself and by him indorsed in blank. This loan was obtained from Henry Denhart and Company by the Washington Land Company, a corporation. Henry Denhart and Company was then and had been for some considerable length of time engaged in the general banking and farm loan business in Washington, Illinois, prior to 1920 operating as a private bank, but organized as a State Bank under the laws of the State of Illinois on January 1, 1921. The bank was closed by the State auditor of public accounts in April, 1930, and Rae C. Heiple was appointed receiver and is still acting as such. The five notes secured by said trust deed were all payable on March 1st, 1930, at the banking house of Henry Denhart and Company with interest payable annually at the rate of five and one-half per cent per annum. Appellees Cleo Bittner, Sophia Rickman, Frederick Rickman and Dorothy Rickman and Nettie Chaffer own four of the notes, Bittner having two, the Rickmans one and Nettie Chaffer one. The administrators of the estate of George Birkett, who are defendants to the bill, own the other note. No interest had been paid on said notes since March 1, 1929, and no part of the principal had been paid.

It further appears that W. A. Pfeiffer, Sr., died on November 14, 1929, testate. Pauline Field, Wm. A. Pfeiffer, Jr., and Elsie Risser were appointed administrators with the will annexed of the estate of W. A.

Pfeiffer, Sr., deceased, and are still acting as such administrators. The Washington Land Bank Company is a corporation organized under the laws of the State of Illinois, with its principal place of business at Washington, Illinois. The object for which it was formed was "to conduct a general real estate agency business" and was organized in 1919. Appellees Bittner, the Rickmans and Chaffer filed their bill to the February term, 1931, of the Knox county circuit court making the administrators of the George Birkett estate, of the W. A. Pfeiffer estate, the Washington Land Company, Rae C. Heiple, receiver, Henry Denhart, trustee, and others parties defendant. All of the defendants answered.

A hearing was had and a decree of foreclosure entered which decreed the payment of $11,400.37 to Cleo Bittner; $5,700.18 to Dorothy Rickman, Frederick Rickman and Sophia Rickman, and $5,700.18 to Nettie C. Chaffer, and solicitors' fees of $2,280; the payment of $5,700.18 and solicitors' fees of $285 to Perry A. Birkett and Lester P. Birkett, administrators of the estate of George Birkett, deceased, and found that W. A. Pfeiffer, Sr., was personally liable during his lifetime for the payment of said principal notes, interest, costs of suit, expenses of the sale and solicitor's fees, and that the estate of W. A. Pfeiffer, Sr., should be held to be liable to pay any deficiency; ordered the administrators of W. A. Pfeiffer, Sr., deceased, to pay said sum within 10 days and that in default of such payment the premises be sold at public auction by the master in chancery; and that in case the proceeds from said sale be insufficient, that the master specify the amount of such deficiency and that the defendants, the administrators of the estate of W. A. Pfeiffer, Sr., deceased, whose estate is personally liable, pay such deficiency.

The record discloses that after the master's report and objections and exceptions thereto were filed, the

administrators for the estate of Pfeiffer asked leave to file a cross-bill charging that the trust deed and notes were invalid because of an abuse of corporate power by appellant, Washington Land Company. The court denied the leave to file a cross-bill.

An appeal from this decree is prosecuted by the administrators of the estate of W. A. Pfeiffer, deceased, for its legatees and devisees. The Washington Land Company did not join in the appeal but has filed a brief herein and has attempted to join in the assignment of errors.

The facts as shown by the record are that a number of men organized what is known as the Washington Land Company with headquarters at Galesburg, Illinois, for the purpose of buying and selling real estate. W. A. Pfeiffer, Sr., had stock in the Washington Land Company and was one of its active members. The Washington Land Company no doubt exceeded its authority as provided by the statute, that is, instead of dealing in land, the company bought land and held it for speculative purposes. Subsequently they realized they could not do this openly, so in the particular case in question, they purchased a tract of land and took title to it in the name of W. A. Pfeiffer, Sr. The purchase price of the land was $54,000. The land company had only $29,000, so they made application to the Henry Denhart & Company Bank for a loan of $25,000. This loan was secured by a trust deed signed by W. A. Pfeiffer, Sr., who was record owner of the land. The notes were taken in denominations of $5,000 each with two sets of coupons on each note, one coupon for five per cent interest and the other for one-half of one per cent. At the time the deed to this land was made to W. A. Pfeiffer, Sr., he and his wife executed a deed in blank to the Washington Land Company, conveying to the Land Company the same premises which were mortgaged to Henry Denhart & Company. The Denhart Company sold five $5,000 notes, being the ones involved

in this controversy. The interest was in default and complainants instituted this foreclosure proceeding. W. A. Pfeiffer, Sr., had died, so his heirs and administrators with the will annexed were also made parties defendant. It is the contention of the appellants that W. A. Pfeiffer, Sr., acted as agent and trustee in taking title to the land, and he in fact executed the mortgage as agent and trustee for the Washington Land Company; that this fact was known to Henry Denhart & Company who took the notes involved in this controversy and later sold them to appellee and defendant note holders; that the note holders in reality were affected with the knowledge which the Henry Denhart & Company had and their rights were no greater than those of the Denhart Company; that in this State the assignee of a note and trust deed takes the same subject to all equities in the hands of the mortgagees and the note holders hold the same subject to all of the equities that would exist if they had been held by their assignor, the Denhart Company; second, that by recording the trust deed in Knox county where the land is located, this gave notice to the note holders of the interest of the Washington Land Company in and to the land in question; that the holders of the notes in question were not innocent purchasers for value before maturity.

It is argued that because of the fact that the court refused the administrators of the estate of Pfeiffer to file a cross-bill to present the question that the notes and trust deed be declared null and void, was error. It will be kept in mind that no leave was asked for with a view of filing a cross-bill until after the master had filed his report and reported his conclusions to the court.

It is not improper for a court to deny a motion to file a cross-bill presenting matters of defense inconsistent with answers on file after a hearing in the

cause has been concluded. *Fread v. Fread,* 165 Ill. 228, 232; *Nix v. Thackaberry,* 240 Ill. 352, 359; *Drew v. Drew,* 271 Ill. 239, 248. Furthermore such cross-bill is unnecessary where the matters pleaded are equally available by answer. *Roby v. South Park Commissioners,* 252 Ill. 575, 583.

An examination of the cross-bill (which is appended to the record following the certificate of the clerk thereto, and which is not a part of the record) discloses that appellants, the Pfeiffer heirs, sought no relief thereby that was not available to them by a proper answer. It is a well established rule that a cross-bill must be founded upon matters of defense entirely consistent with the answer to the original bill. *Ragor v. Brenock,* 175 Ill. 494, 500.

An examination of the answer filed by the Pfeiffer heirs in connection with the proposed cross-bill discloses that the position taken in the cross-bill is entirely inconsistent with their answer. The cross-bill prays that the mortgage and notes be declared void. The answer of the Pfeiffer heirs offered as a defense no claim other than a denial of personal liability of W. A. Pfeiffer and of his estate. No error therefore was committed in the refusal, in view of the state of the record, to permit the filing of the cross-bill.

An examination of the record discloses that W. A. Pfeiffer, Sr., took title and executed these notes as an accommodation to the Washington Land Company and was an accommodation maker. It is quite evident that Pfeiffer, at the time he executed these notes, had knowledge of the fact that the notes were going to be sold by the Denhart Company. Instead of making the loan in one $25,000 note there were executed five $5,000 notes with two coupons as above stated. Anyone at all familiar with real estate or banking business would fully know that the reason this was done would be so that these notes could be more readily disposed of.

There is no evidence in the record which tends to show in any manner that the purchasers of these notes were not what are regularly termed innocent purchasers for value. As far as the record is concerned it shows that the title was in Pfeiffer and each holder paid value received for their notes when they purchased them from Denhart & Company. It seems to be a settled rule that when the accommodation paper is in the hands of one who has taken it in good faith in the usual course of business for value, the maker of the same can make no defense in a foreclosure proceeding, to enforce their rights.

In *Foreman Trust & Savings Bank v. Cohn*, 342 Ill. 280, at page 286, the court approved the rule announced in *Miller v. Larned*, 103 Ill. 562, relating to the question of accommodation paper and quoted from *Miller v. Larned, supra*, from page 580, as follows: "It would be most unreasonable to affirm the grantor in a mortgage to secure accommodation paper has any equity superior to those of the assignee of the note, who thereby becomes the equitable assignee of the mortgage. Any application of the doctrine of *Olds v. Cummings* (31 Ill. 188), to the maker of a mortgage to secure accommodation paper would be to make a most equitable and reasonable doctrine the means of enabling a party to perpetrate a great wrong on another. A court of equity will not lend its aid for any such purpose. Of course, the party accommodated could never recover the amount of the bill or note from the maker, but the settled law is, wherever the common law prevails, to accommodation paper in the hands of one who has taken it in good faith in the usual course of business for value the maker can make no defense. . . . To allow the equities existing between the original parties to accommodation paper secured by mortgage to prevail over the equities of the assignee of the note would be to carry the doctrine of *Olds v. Cum-*

*mings* to such an unreasonable extent as would ensnare honest dealers in such securities."

In the *Foreman Trust-Cohn* case, *supra,* at page 286, the court further said: "In *Naef v. Potter,* 226 Ill. 628, it was held that a transferee of accommodation paper in good faith and for value, even after maturity and with notice that it is accommodation paper, is entitled to recover, notwithstanding it has been diverted from its purpose, where there are no restrictions as to its use written into the paper and no notice of such restrictions brought to the knowledge of the transferee; that such accommodation paper must be made without legal consideration and the maker may impose such restrictions upon it as he desires, but unless such restrictions are written into the paper or otherwise brought to the knowledge of the transferee for value before he has received the paper, the fact that the paper was past due and that there were verbal restrictions as to its use constitutes no defense to the paper or the foreclosure of the mortgage securing it. To the same effect is *Keenan v. Blue,* 240 Ill. 177, where it was held that fraudulent representations going only to reasons prompting the maker of accommodation paper to lend credit are no defense to its collection."

Section 29 of the Illinois Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 49, provides:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party and in case a transfer after maturity was intended by the accommodating party notwithstanding such holder acquired title after maturity."

The holders of these notes were innocent purchasers for value. Such being the case the Pfeiffer heirs cannot defeat the right of the complainants to foreclose the trust deed.

It is argued by the appellants that the court erred in refusing to find that the mortgage given by W. A. Pfeiffer, Sr., was illegal and void and that the notes signed by W. A. Pfeiffer, Sr., for money borrowed for the Washington Land Company were illegal and void. Assignments of error are to that effect. In view of the pleadings appellants are not in a position to argue that the court erred in refusing to find that the mortgage given by Pfeiffer Sr., was illegal and void or that the money borrowed for the Washington Land Company was an illegal and void transaction. The only disputed issue presented by the pleadings relates to the question of the liability of the Pfeiffer estate for any deficiency which may result from foreclosure sale. This was the only disputed issue considered by the master and the only issue presented by the objections and exceptions to the report of said master. Concerning the matters in dispute the master's findings approved by the court, among other things, were as follows:

"That each of said notes has on its face the printed statement that the same were negotiated by Henry Denhart & Company Bank, and that each was made payable at the office of said bank, and said trust deed has on its back the printed statement that it was 'negotiated by Henry Denhart & Company, bankers and dealers in real estate loans'; that Henry Denhart & Company was engaged in a general banking and farm loan business; that Henry Denhart was president of said bank and that W. A. Pfeiffer, Sr., knew, or should have known, that in the ordinary course of business that the said notes would probably be sold to customers of the bank, and in entering into the transaction in-

volving the said notes and trust deed with said bank and with Henry Denhart, trustee, W. A. Pfeiffer, Sr., gave his express or implied consent to the subsequent sale of said notes to third parties.

''That there is no evidence or testimony to indicate that the purchasers of said notes were not innocent purchasers for value before maturity, nor that such purchasers had any knowledge or notice, actual or constructive, that W. A. Pfeiffer, Sr., was not the actual owner of the mortgaged premises, or that he was acting as trustee or agent or that he did not intend to assume personal liability for the payment of said notes.''

Although the question relative to the invalidity of the trust deed and notes is not raised by the pleadings, still appellants have seen fit to take up much space in discussing that the alleged abuse of the corporate powers of the Washington Land Company invalidated the trust deed and notes in question. It is insisted that the notes and trust deed are null and void because the Washington Land Company had no power under its charter to purchase the mortgaged real estate as an investment and no power to borrow money with which to make such purchase either directly or through Pfeiffer as trustee, and that appellees are chargeable with notice that such notes were void because the stockholders of Henry Denhart & Company from which appellees purchased the principal notes were also stockholders of said Washington Land Company and knew of the alleged ultra vires character of this transaction. If this conveyance had been made directly to the Washington Land Company it would not have been subject to collateral attack. The cases relied upon by appellants, in which conveyances to corporations or to trustees for corporations, have been declared void when collaterally attacked, are those in which the purchase was beyond the scope of the powers

granted to it by law. Corporations cannot be organized in Illinois for the sole purpose of buying and selling lands, and corporations organized in another State have not been permitted to engage in such business in Illinois, and a purchase by a foreign corporation has been avoided upon collateral attack. The rule, however, is that a conveyance to a corporation is not subject to collateral attack unless it appears that the purchase was wholly outside the general scope of its corporate powers, express or implied, and entirely foreign to the objects and purposes of its creation,—something which, under any and all circumstances, was beyond its power, either as expressed in the grant or as possessed by necessary implication. *Rector v. Hartford Deposit Co.*, 190 Ill. 380, 389.

The Washington Land Company was not organized for an illegal purpose. The statutes of Illinois in force on March 3, 1919, when this corporation was chartered, quoted in *Haberer v. Smerling*, 307 Ill. 191, 194, provide that ''corporations may be formed under this act for the purpose of carrying on the real estate agency business.'' Such corporations were given the same powers as are given to ''agency and loan corporations'' under the present statute. Illinois statute then, as now, provided that corporations organized under such act should have power to ''acquire and to own, possess and enjoy so much real and personal property as may be necessary for the transaction of the business of such corporation, and to lease, mortgage, pledge, sell, convey or transfer the same,'' etc. It further provided that such corporations should have power ''to borrow money at such rate of interest as the corporation may determine . . . and to mortgage its property, both real and personal, to secure the payment thereof'' (General Incorporation Act, sec. 6). Corporations, then as now, had a right to acquire title to real estate in satisfaction of a debt. It is true that no corporation could then be organized in Illinois for

the purpose of acquiring or owning real estate, and the secretary of state would have refused a charter upon an application to organize a corporation for such a purpose. The Washington Land Co. was organized "to conduct a general real estate agency business" and was, therefore, organized for a lawful purpose. It had power to acquire real estate, borrow money and give security. The question as to whether it has abused its power can only be raised by the State (*Bartee Tie Co. v. Jackson,* 281 Ill. 452, 461; *McIlvaine v. Foreman,* 292 Ill. 224, 229). Furthermore the administrators of Pfeiffer and the Washington Land Co. are estopped to plead ultra vires as a defense to the trust deed because the corporation has had the benefit of such trust deed. The contention of appellants is to the effect that the land company conspired with Pfeiffer, now deceased, one of its stockholders, to violate the statute regulating the ownership of lands by corporations by engaging in a real estate speculation in the name of Pfeiffer. It is argued that Pfeiffer and the land company should, as the fruits of such conspiracy, be relieved from the payment of the money loaned to them on Pfeiffer's promissory notes and used in such real estate speculation because certain officers of the bank making such loan were also stockholders of the Washington Land Company and knew of such conspiracy to evade the Illinois statute.

Notice to an officer of a corporation is not notice to the corporation in transactions where the officer is dealing with the corporation in his own interest and not in the interest of the corporation (*American Guaranty Co. v. State Bank of East Lynn,* 244 Ill. App. 16, 29).

In *Bradley v. Ballard,* 55 Ill. 413, the court at page 417 said:

"It is said by counsel for complainant that a corporation is not estopped to say, in its defense, that it had not the power to make a contract sought to be en-

forced against it, for the reason that, if thus estopped, its powers might be indefinitely enlarged. While the contract remains unexecuted on both sides, this is undoubtedly true, but when, under cover of this principle, a corporation seeks to evade the payment of borrowed money, on the ground that although it had the power to borrow money, it expended the money borrowed in prosecuting a business which it was not authorized to prosecute, it is pressing the doctrine of ultra vires to an extent which can never be tolerated, even though the lender of the money knew that the corporation was transacting a business beyond its chartered powers and that his money would be used in such business, provided the business itself was free from any intrinsic immorality or illegality. . . .'

"In cases of such character, courts simply say to the corporation: You cannot, in this case, raise the question of your power to make the contract. It is sufficient that you have made it, and by so doing have placed in your corporate treasury the fruits of others' labor, and every principle of justice forbids that you be permitted to evade payment by an appeal to the limitations of your charter."

The principles announced in *Bradley v. Ballard, supra,* would be applicable if this suit was brought by Henry Denhart & Company and it was still the owner of all of these notes. These principles apply with still greater force to this suit brought by innocent purchasers for value of said notes.

Again, the administrators and heirs of Pfeiffer, deceased, are estopped to question his title to the mortgaged real estate. As appears from the trust deed Pfeiffer granted, bargained, sold, conveyed, mortgaged and warranted certain real estate in Knox county to Henry Denhart, as trustee, for the use and benefit of the holders of the notes secured by such trust deed. His administrators and heirs sought by the cross-bill

which they presented for filing in the circuit court, to question the validity of the title which he thus warranted, and rely upon such alleged failure of title as their principal defense to this suit. A mortgagor who in terms "mortgages and warrants" the property to the mortgagee is estopped, as against the mortgagee to deny that he held title when he executed the mortgage (*Roderick v. McMeekin,* 204 Ill. 625). In the decision in the above entitled cause at page 636 the court, among other things, said:

"He (Hicks) represented himself to be the owner when he executed the mortgage, and in the mortgage he states that he mortgages and warrants the property to the mortgagee. By the use of the words 'and warrants' the mortgage executed by him is to be construed as if full covenants of seizin, good right to convey, against incumbrances, quiet enjoyment, and general warranty, were fully written therein. (Conveyance Act, sec. 11.) Inasmuch as, by the terms of his deed, he said that he had title and covenanted to defend and make it good, he was estopped from denying that he had title when he made the mortgage. (. . . *Dobbins v. Cruger,* 108 Ill. 188.) In *Dobbins v. Cruger, supra,* we said: 'The principle is, a warrantor will not be permitted to assail a title he has solemnly covenanted to maintain. It would be a solecism to say that a party may destroy that which, at the same instant, he must uphold.' It is well settled that 'when one gives a mortgage upon land to secure a debt, he is estopped by the recitals in his contract creating the lien, from denying his title to the mortgaged premises'. . . . 'The general rule is, that a mortgagor is estopped from setting up, in resistance to a foreclosure proceeding, that he had no right or title to the mortgaged premises.' "

No pleadings filed, or presented for filing by Washington Land Company, present any question concerning

the validity of the Pfeiffer title. The Pfeiffer administrators and heirs are estopped to question the validity of the title of their ancestor because of his covenants of warranty.

The decree among other things contains the following: "That in case the proceeds from the sale be not sufficient, that the Master specify the amount of. such deficiency and that the defendants, Pauline Field, Wm. A. Pfeiffer, Jr., and Elsie Risser, administrators of W. A. Pfeiffer, Sr., deceased, whose estate is personally liable, pay such deficiency." The decree provides that the heirs of W. A. Pfeiffer, Sr., deceased, should pay the deficiency, if any. Of course, there would be no deficit until after a sale. Since appellees and holders of the notes in question are entitled to the decree of foreclosure as rendered, it would necessarily follow that if there was any deficiency the Pfeiffer heirs would have to pay the same. No harm has been done to the appellants or any of them merely because the decree provides for the payment of a deficiency.

We conclude that the equities of the cause are with the appellees.

The decree of the circuit court of Knox county is affirmed.

*Decree affirmed.*