(No. 11304.—Decree affirmed.)

JOHN H. HOWARD *et al.* Defendants in Error, *vs.* WILLIAM
FOSTER BURNS, Plaintiff in Error.

*Opinion filed June 21, 1917.*

1. EQUITY—*allegations of a bill, the proof and the decree must
correspond.* The allegations of a bill, the proof and the decree
must correspond, and relief cannot be given upon facts proved by
the evidence where there are no averments in the bill to which
the evidence can apply, but it is sufficient if the evidence shows
the transaction was not materially different from the allegations.

2. SAME—*the rule that an equity cannot be gained by voluntary,
payment of a debt does not apply to purchaser of a note.* The rule
that one who is only a volunteer in the payment of a debt cannot
establish an equity in his own favor but must have paid on re-
quest or as surety or under some compulsion made necessary for
the protection of his own rights, does not apply to the purchaser
of notes who did not intend by his purchase to pay the debt.

3. MORTGAGES—*maker of note secured by trust deed may pay
same and be subrogated where the property has been conveyed.*
Where one makes a note payable to his own order and indorses it,
the note being secured by trust deed on the maker's property, the
property becomes the primary fund for the payment of the debt,
and after its conveyance subject to the incumbrance the maker of·
the note, who, in order to protect his credit, pays interest and con-
tributes funds for the purchase of the note by the person to whom
it was transferred, is entitled to be subrogated to the rights of the
creditor to the extent of his payments and to enforce the lien of
the trust deed.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on appeal from the Circuit
Court of Cook county; the Hon. JESSE A. BALDWIN, Judge,
presiding.

GEORGE F. ORT, for plaintiff in error.

EUGENE D. SULLIVAN, and THOMAS L. STITT, (S. R.
FUTRANSKY, and P. B. SMITH, of counsel,) for defend-
ants in error John H. Howard and James L. Shaw.

WILLIAM B. JARVIS, for defendant in error Carl A.
Stonehill.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On January 26, 1909, Mary M. Shaw and James LeRoy Shaw, her husband, made their promissory notes payable to their own order and indorsed by them, one for $3000 due January 26, 1912, one for $3000 due January 26, 1913, and one for $24,000 due January 26, 1914, each with interest at five and one-half per cent before and seven per cent after maturity, and secured payment of the same by a trust deed on real estate in Chicago to Simon W. Straus, trustee. They afterward executed a second trust deed on the same property to the Chicago Title and Trust Company, and on April 11, 1910, they conveyed by warranty deed the property to Carl O. Youngquist, who, as a part of the consideration, assumed and agreed to pay the principal sum of $30,000 and interest, secured by the trust deed to Straus. On November 10, 1910, Carl O. Youngquist and wife conveyed the property to Ormand B. Jacobson by a warranty deed in consideration of one dollar, subject to existing incumbrances aggregating $34,000, unpaid taxes and special assessments. On November 16, 1911, Ormand B. Jacobson and wife conveyed the property by warranty deed, in consideration of one dollar, to Emmett G. Morris.

On February 24, 1912, John H. Howard, one of the defendants in error, filed his bill of complaint in the circuit court of Cook county, alleging that he was the owner of the principal note for $3000 due January 26, 1912, and the interest coupon of $82.50 for interest on the same, due on the same date, and that by agreement his lien had been subordinated to the prior lien of the note for $3000 due January 26, 1913, and interest, and the note for $24,000 due January 26, 1914, and interest, and prayed for the appointment of a receiver and a foreclosure of the trust deed to pay the amount due him, subject to said prior liens. Mary M. Shaw and James LeRoy Shaw answered

279 — 17

the bill, and Simon W. Straus, the trustee, and Samuel J. T. Straus, successor in trust, also filed their answer in substantial accord with the original bill. On March 6, 1912, Benjamin F. Morris was appointed receiver, and was afterward discharged and John J. Bradley substituted as receiver. Carl O. Youngquist and various persons alleged to claim some interest in the premises were made defendants, but the deed to Emmett G. Morris was recorded after the bill was filed and he was added as a defendant. The junior trust deed was foreclosed at the suit of Mary Reardon, and the property was sold under the decree and purchased by her and she received a certificate of purchase. The plaintiff in error, William Foster Burns, obtained a judgment against Emmett G. Morris and redeemed from the Reardon foreclosure, and on September 10, 1912, the sheriff executed a deed to Burns. On December 28, 1912, Burns, who had succeeded to the title of Morris by the redemption, filed his intervening petition to be made a party defendant to the Howard suit. The petition was granted, defaults were entered against part of the defendants, the bill, on motion of the complainant, was dismissed as to Youngquist, the cause was referred to a master in chancery and Burns given leave to file an answer within fifteen days. Burns answered the bill of complaint, denying that the complainant ever had any interest in or title to the notes or had any lien on the premises, and on February 24, 1913, he filed his cross-bill, alleging that the notes in question were paid by Shaw, the original debtor. Carl A. Stonehill was the owner of the other notes for $3000 and $24,000, respectively, and he answered the bill, alleging, as in the bill, that the notes owned by the complainant were subordinated to his lien, and he also filed a cross-bill on April 14, 1913, for the foreclosure of his notes. Burns answered the cross-bill of Stonehill on May 12, 1913, denying its material allegations, and Mary M. Shaw and James LeRoy Shaw answered Burns' cross-bill on November 10, 1913,

and on November 18, 1913, James LeRoy Shaw filed his cross-bill, setting out the conveyance to Youngquist and the obligation of Youngquist to pay the incumbrance, and alleging that he and his wife had asked Howard to purchase the notes for $3000 and $82.50, respectively, maturing January 26, 1912; that Howard had $1825, and Shaw raised the balance to enable Howard to buy the notes, and that he had paid other interest notes, and, standing in the relation of surety for Youngquist, he had a right to be subrogated to the securities, and he claimed the right to a foreclosure for his benefit. Straus answered the cross-bill, and Stonehill also answered. Burns filed a plea to the cross-bill of Shaw and also a special demurrer, but no reference is made in the abstract to any ruling on either.

A recital at length of the allegations of the numerous pleadings would be a tedious process and result in nothing worth while. The substance of all the pleadings was, that Howard, Shaw, Stonehill and Straus recognized the right of Howard to foreclose the trust deed as legal holder of the note for $3000 due January 26, 1912, and the interest note of $82.50, due on the same date; that his actual interest in the note was to the extent of $1825 and interest, and the balance belonged to Shaw; that Shaw had paid other moneys for interest, for which he was entitled to be subrogated to the lien of the trust deed but subordinate to the lien of Stonehill, and that Stonehill had a prior lien for the amount of the notes owned by him, and Burns disputed the claims and rights of the other parties. The cross-bill of Burns was unnecessary, since he asked for nothing except an injunction against Howard restraining him from a further prosecution of his suit and such relief as he would have had by his answer.

The master in chancery took the evidence, and his report was in accordance with the claims of Howard, Shaw and Stonehill, and he found as a matter of law that when Mary M. Shaw and James LeRoy Shaw conveyed the

premises to Youngquist and Youngquist assumed the payment of the money secured by the trust deed, Youngquist, as between those parties, became the principal debtor and Mary M. Shaw and James LeRoy Shaw sureties; that the mortgaged property throughout the subsequent conveyances and redemption remained the fund out of which the indebtedness should be paid, and that when Shaw paid moneys to protect his credit he became subrogated to the rights of the previous holder, subject to the remaining indebtedness. He found that Howard was the legal holder of the first principal note of $3000 and the interest note, but his right in it was limited to $1825 and interest, and an account was stated showing due to Howard and Shaw $3642.86 as a valid lien, subject only to the prior lien of Stonehill. Objections were filed to the report, and it was approved except as to small matters, in which it was modified by the decree. A decree was entered, with which all the parties were content except Burns, and the decree was affirmed by the Appellate Court for the First District. On the petition of Burns a writ of *certiorari* was granted, and the only questions now to be considered relate to his assignments of error.

The allegations of a bill, the proof and the decree must correspond, and relief cannot be given upon facts proved by the evidence where there are no averments in the bill to which the evidence can apply. (*McKay* v. *Bissett,* 5 Gilm. 499; *Morgan* v. *Smith,* 11 Ill. 194; *Rowan* v. *Bowles,* 21 id. 17; *Russell* v. *Conners,* 140 id. 660; *Dorn* v. *Geuder,* 171 id. 362.) The plaintiff in error invokes that rule and insists that the evidence for the complainant did not support the case made by the bill; that the theory of the bill and Shaw's cross-bill did not accord with the finding of the decree that Howard and Shaw agreed to contribute respective amounts to be paid to the trustee to enable Howard to purchase the notes. It was proved that on January 26, 1912, the first note for $3000 became due; that Shaw, who

was personally liable, applied to Howard to buy the notes; that Howard had $1825, and agreed to take the notes if Shaw could in some way raise the additional sum due on them; that Howard paid $1825 and Shaw raised the residue of the money, and that it was agreed with the trustee that the notes were to be placed in the hands of his attorney, to be held, uncanceled and unindorsed, until they were subordinated to the lien of the residue of the notes. The understanding was that Howard was the purchaser of the notes, to be held by the attorney for the trustee, and he was to be re-paid his money with interest, and Shaw was next to be reimbursed for the money he had paid. While the witnesses sometimes characterized the transaction as a loan by one or the other, the evidence showed exactly what was done and what the agreement was, and the transaction was not different in any material sense from the allegations of either the bill or the cross-bill of Shaw.

It is next contended that there was no privity of contract between Howard and Stonehill, the owner of the notes, but that Howard was a mere volunteer who paid the mortgage debt, and therefore was not entitled to subrogation. It is true that one who is only a volunteer in the payment of a debt cannot establish an equity in his own favor, but must have paid on request or as surety or under some compulsion made necessary for the protection of his own rights. Howard was not in the position insisted upon and did not pay or intend to pay the notes, but, so far as he was concerned, the transaction was a purchase. So far as the participation of Shaw in the transaction was concerned, if his contribution be regarded as payment to that extent he had a right to pay the indebtedness upon the failure of Youngquist to meet his obligation. As between Shaw and Youngquist, Shaw stood in the relation of a surety, although Stonehill could treat both as principal debtors and was not bound in any way by their relations with each other. Shaw had a right to pay notes for which he was personally liable

as they came due, and the property became a primary fund for the payment of the debt, so that Shaw was entitled to be subrogated to the rights of the creditor but junior to the lien of Stonehill, and he would have a right to foreclose the trust deed for his own benefit. (*Billings* v. *Sprague,* 49 Ill. 509; *Beaver* v. *Slanker,* 94 id. 175; *Darst* v. *Bates,* 95 id. 493; *Flagg* v. *Geltmacher,* 98 id. 293; *Fish* v. *Glover,* 154 id. 86.) It was, of course, immaterial into whose hands the property might pass, either by conveyance or by subsequent redemption from a junior incumbrance. Shaw not only contributed to the purchase by Howard but paid interest on the indebtedness, for which he was entitled to subrogation. Equity looks at the substance of things, and the form of the transaction was immaterial. There is no reason, in law or equity, why the property should be relieved from the payment of the incumbrance or to prevent Howard and Shaw from each contributing to a transfer of the notes to Howard.

By the decree the clerk was directed to pay the moneys in his hands deposited by the former receiver, Morris, to Stonehill, and the receiver, Bradley, was also ordered to pay the moneys in his hands to Stonehill. It is alleged in argument that the account was incorrectly stated, on the ground that $742.50 paid by Shaw to Straus for interest on August 20, 1912, was re-paid out of the receivership before he filed his cross-bill. The record does not support the claim, but shows that on that date Straus & Co. paid Shaw $580.42, which is credited in the statement of account.

The final complaint is that the court allowed solicitors' fees. The allowance was of $600 to Stonehill and $500 to Howard and Shaw. The particular objection seems to be that Shaw's cross-bill was unnecessary, which is not correct, since he could not have secured his rights respecting the other payments and the contribution to Howard's purchase without a cross-bill. The plaintiff in error is not concerned

with the manner in which Howard and Shaw may appor-
tion the solicitors' fees between themselves.

The decree is affirmed.                     *Decree affirmed.*