*Decision will be entered under Rule 50.*

EDWARD C. KOHLSAAT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 91723, 92169. Promulgated September 7, 1939.

*Harry N. Wyatt, Esq., Richard H. Levin, Esq.,* and *A. J. Pflaum, Esq.,* for the petitioner.

*David Altman, Esq.,* for the respondent.

### OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in petitioner's income tax for 1934 and 1935 in the respective amounts of $197.24 and $424.11. The questions in issue are whether the petitioner is entitled to the deduction of interest on a mortgage note and taxes on the real estate securing the mortgage, which were paid by the petitioner's divorced wife with funds furnished to her by the petitioner for that purpose after he had deeded the property to the wife under a separation agreement.

The petitioner is a resident of Chicago, Illinois, and is a practicing attorney.

In 1922 the petitioner purchased certain residential property located at 777 Bryant Avenue, Winnetka, Illinois, paying a part of the purchase price in cash and executing purchase money notes, secured by a first mortgage in the face amount of $25,000, for the balance. The mortgage was refinanced in 1929 when the old notes became due and the new mortgage and notes of the face amount of $22,500 were executed. Petitioner's wife, Mabel G. Kohlsaat, joined with him in executing the new mortgage notes. The wife, however, had no interest in the property other than her dower rights.

On May 24, 1933, petitioner and his wife were divorced by decree of the Circuit Court of Cook County, Illinois, and on that date they executed a separation agreement which was incorporated in the divorce decree. The agreement provided in effect that the petitioner would pay to Mabel G. Kohlsaat $700 a month as alimony and in addition would convey to her the above mentioned real estate located at 777 Bryant Avenue, Winnetka, Illinois, which had been used by them as a family residence; that in addition to the $700 monthly alimony petitioner would pay to his wife $225 a month, until the aggregate amount of $15,000 had been paid, which payments were to be used by the wife in paying the carrying charges against the property,

including taxes, special assessments, and interest on the outstanding mortgage amounting at that time to $15,000. The balance of the $225 monthly payments was to be applied in reducing the principal of the mortgage. The agreement reads in material part as follows:

WHEREAS, the parties are desirous of settling and determining their respective property rights and to fix a fair and reasonable provision for the support and maintenance of the said wife;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties AGREE as follows:

(a) The husband shall pay to the wife the sum of Seven Hundred Dollars ($700.00) per month as alimony, for the support and maintenance of herself until her death or remarriage, and the parties specifically agree that said order and amount is to stand regardless of any future change in the financial condition of either party that may occur hereafter.

(b) The said husband shall transfer and convey to the wife all of his right, title and interest in and to the premises located in the Village of Winnetka, County of Cook and State of Illinois, commonly known as 777 Bryant Avenue and legally described as follows:

\*            \*            \*            \*            \*            \*            \*

\* \* \*      Said premises are at this time encumbered with a first mortgage lien in the principal amount of Eighteen Thousand Dollars ($18,000.00) and a second mortgage lien in the principal amount of Ten Thousand Dollars ($10,-000.00). The said mortgage lien of Ten Thousand Dollars ($10,000.00) is to be cancelled and released. The first mortgage lien in the principal amount of Eighteen Thousand Dollars ($18,000.00) is to be reduced by the sum of Three Thousand Dollars ($3000.00), to a net principal indebtedness of Fifteen Thousand Dollars ($15,000.00). Said husband shall cause the then existing first mortgage of Fifteen Thousand Dollars ($15,000.00) to be modified so as to provide for annual payments of principal to be the sum of One Thousand Dollars ($1000.00) instead of Fifteen Hundred Dollars ($1500.00) per year, and also agrees to cause the annual interest thereon to be reduced from six percent (6%) to five and one-half percent (5½%). Said husband further shall cause the maturity of said indebtedness to be extended under the foregoing terms to the 9th day of August, A. D., 1938.

(d) The said husband is to pay to the said wife, in addition to the said Seven Hundred Dollars ($700.00) above provided for, the sum of Two Hundred Twenty-five Dollars ($225.00) per month until the aggregate net sum of Fifteen Thousand Dollars ($15,000.00) has been paid to the wife under the provisions of this paragraph; that the said monthly payments of Two Hundred Twenty-five Dollars ($225.00) are to be used by the wife and applied by her to pay the carrying charges against said premises, namely, general taxes, special assessments and interest on the first mortgage indebtedness, the balance of said monthly payments to be applied towards reduction of the principal of said first mortgage indebtedness against said premises. The said wife shall make such payments as hereinabove agreed, and shall within thirty (30) days after the due date thereof produce for the inspection of the husband proper receipts evidencing the fact of such payments. In the event said premises shall be rented by the wife and thereafter the tenant vacates or defaults in payment of rent, then in such event the sum of One Hundred Forty Dollars ($140.00) per month, out of the Two Hundred Twenty-five Dollar ($225.00) monthly payments, is not to be credited against the aggregate sum of Fifteen Thousand Dollars ($15,-000.00) to be paid by the husband to the wife as provided in this paragraph, so

long as such premises are not producing any revenue. Provided, however, that the husband shall have the right at all times to pass upon the desirability of any prospective tenant for said premises before such tenant is accepted by the wife. In the event the above described property is sold by the wife before the husband shall have paid to her the sum of Fifteen Thousand Dollars ($15,000.00) under the terms of this paragraph, and the amount realized from such sale shall be less than the sum of Twenty-five Thousand Dollars ($25,000.00) net to the wife, then in such event the payments thereafter to be made by the husband shall continue until such time as the aggregate of the amount realized from such sale, taken together with the monthly payments by the defendant of Two Hundred Twenty-five Dollars ($225.00), shall equal the total sum of Twenty-five Thousand Dollars ($25,000.00), but in no event shall the obligations of the husband under this paragraph exceed the sum of Fifteen Thousand Dollars ($15,000.00). In the event said premises are sold by the wife and the amount realized therefrom, taken together with the monthly payments theretofore made to her by the husband under this paragraph, exceeds the sum of Twenty-five Thousand Dollars ($25,000.00), then in such event the wife agrees to pay to and reimburse the husband the excess over the sum of Twenty-five Thousand Dollars ($25,000.00) thus realized, limited, however, to the amount of the contributions made by the husband under this paragraph, and future payments under this paragraph shall not be required of the husband.

In accordance with the above agreement the Winnetka property was conveyed by warranty deed to Mabel G. Kohlsaat's attorney, Frank E. Cantwell, as her nominee, soon after the divorce decree was entered. The deed was executed by the petitioner and his wife jointly and provided that the conveyance was made "subject to the existing first mortgage" in the amount of $15,000.

Thereafter, and during 1934 and 1935, petitioner made the payments to his wife called for in the separation agreement. Likewise, in accordance with the agreement his wife paid the interest on the mortgage note in the amounts of $825 in 1934 and $756.25 in 1935. She also paid taxes on the property of $975.52 in 1934, being the taxes assessed for 1931 and 1932, and $1,263.31 in 1935, being the 1933 taxes in the amount of $605.25 and the 1934 taxes in the amount of $658.06.

In making his income tax returns for 1934 and 1935 petitioner deducted all of the above amounts of interest and taxes paid on the Winnetka property during those years.

The respondent in his determination of the deficiencies herein allowed the deduction of the taxes for 1931 and 1932 which were paid in 1934 but disallowed the deduction of the interest paid in 1934 and 1935, as well as the taxes paid in 1935.

At the hearing before the Board the respondent asked for an increase in the 1934 deficiency based upon the disallowance of the deduction of the 1931 and 1932 taxes paid in that year.

The respondent's contentions are that the interest and the taxes paid on the Winnetka property in 1934 and 1935 after the property

had been conveyed to petitioner's wife were paid by the wife out of her own funds; that the monthly payments of $225 which petitioner made to his wife under the separation agreement were in discharge of petitioner's marital obligations, and under the decisions of the Supreme Court in *Gould* v. *Gould*, 245 U. S. 151, and *Douglas* v. *Willcuts*, 296 U. S. 1, no part of such amounts is deductible from petitioner's gross income.

The petitioner does not contend that all of the $225 monthly payments is deductible, but only such portions as were used to pay the interest and taxes on the Winnetka property. He strenuously argues that the interest and taxes were his personal obligations on which he was primarily liable; that these obligations were paid by him and are therefore deductible by him.

Section 23 of the Revenue Act of 1934 provides in material part that:

* * * In computing net income there shall be allowed as deductions:

* * * * * * *

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, * * *

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year, * * *

Section 24 of the same act provides in part:

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

(1) Personal, living, or family expenses.

Under the express provisions of the separation agreement petitioner's wife was required to use as much as necessary of the $225 monthly payments to pay the carrying charges on the Winnetka property. Parole evidence was adduced by the petitioner at the hearing before the Board through the testimony of the petitioner and Mabel G. Kohlsaat to show that as a condition of the divorce petitioner's wife demanded from him, in addition to the alimony and other benefits provided for in the agreement, a cash payment of $25,000; that petitioner was unable to raise that amount of cash and instead agreed to convey the Winnetka property to her with the understanding that she was to hold it as surety for the payment of the $25,000; that petitioner never intended to and did not part absolutely with the ownership of the property.

The separation agreement itself bears out these contentions in part, but only in part. Undoubtedly the historical reason for the conveyance of the property to the wife was as explained by the witnesses. For instance, there is the provision in the agreement that "in the event said premises are sold by the wife" she would "reimburse" the petitioner for the contributions made (the $225 monthly payments)

to the extent of the excess of the selling price plus the sum of such monthly payments over $25,000.

We can not agree, however, that the conveyance of the property to the wife was merely an equitable conveyance and that she held title thereto as security for the payments to be made by the petitioner in lieu of the $25,000 cash. The deed by which the conveyance was made is complete and unconditional on its face. It makes no mention of any interest in the property being reserved to the petitioner or of the separation agreement between petitioner and his wife. There is no provision in either the deed or the separation agreement that requires the wife ever to reconvey the property to the petitioner. Even though it may have been the intention of the parties that the wife would sell the property if a favorable opportunity should occur, she was under no binding obligation to do so. Petitioner's only interest in the property after the conveyance was the right to receive under certain conditions a portion of the selling price if and when the property should be sold by the wife. There is no evidence in the record as to the value of the property during the years 1934 and 1935 or as to the value, if any, of petitioner's right to receive a part of the proceeds from the sale of the property. Apparently this right had very little value, if any; for there was no obligation on the wife's part ever to sell the property. She was free either to occupy it as a residence or to rent it and receive the rentals for her own use. The separation agreement itself makes provision for certain benefits to the wife to compensate for the loss of revenue from the property caused by a tenant vacating or defaulting in his rental payments.

The fact, however, that there was an unconditional conveyance of the property to the wife prior to the taxable years involved is not dispositive of the issues raised. The property was conveyed to the wife subject to an existing first mortgage in the amount of $15,000. It is so recited in the deed. Ordinarily after such a conveyance, and the absence of any further agreement between the parties, the grantor or mortgagor remains personally and primarily liable to the mortgagee for the mortgage debt, including both principal and interest. *Shepherd* v. *May*, 115 U. S. 505; *Farmers' Loan & Trust Co.* v. *Penn Plate Glass Co.*, 186 U. S. 434; *Scholten* v. *Barber*, 217 Ill. 148; 75 N. E. 460. The property conveyed stands as the primary fund for the payment of the mortgage debt, however, and if the mortgagor subsequently pays the debt he is entitled to reimbursement out of the property. *In re M. Dewing Co.*, 248 Fed. 605; *Howard* v. *Burns*, 279 Ill. 256; 116 N. E. 703. (Petitioner's rights to any reimbursement here, however, are subject to the provisions of the separation agreement which he entered into with the grantee.)

The grantee of mortgaged property does not incur personal liabil-

ity for the mortgage debt in the absence of such contractual obligation. *Elliott* v. *Sackett*, 108 U. S. 132; *Shepherd* v. *May, supra; Crawford* v. *Nimmons*, 180 Ill. 143; 54 N. E. 209. There is no evidence here of any expressed or implied agreement on the wife's part to assume the mortgage indebtedness as her personal liability. The provisions of the separation agreement are that she would use as much as necessary of petitioner's $225 monthly payments "to pay the carrying charges against said premises", including taxes and interest, and would apply the balance to reduce the principal of the mortgage. This did not amount to an assumption of the mortgage debt by the wife. The petitioner remained personally and primarily liable for the mortgage debt as well as the interest thereon, and if such interest was actually paid by him, or by his wife for him, it is he who is entitled to the deduction thereof. It is axiomatic that the statute in allowing the deduction of interest paid refers to interest paid by the taxpayer in discharge of his own liability. As stated in *Chester A. Sheppard, Trustee*, 37 B. T. A. 279, 281, "The statutory provision allowing deduction for interest on indebtedness means interest on an obligation of the taxpayer claiming it." Petitioner's liability on the mortgage debt and interest arose not from any contractual or other obligation to his wife, but from the preexisting mortgage agreement itself. Cf. in this respect *William Ainslie Colston*, 21 B. T. A. 396; affd., 59 Fed. (2d) 867; certiorari denied, 287 U. S. 640, where it was held that interest paid by a husband on his wife's mortgage indebtedness for which he was not liable was not deductible by the husband. To the same effect is *Longyear* v. *Helvering*, 77 Fed. (2d) 116; affirming 28 B. T. A. 1086, holding that interest payments on a note representing alimony were not deductible. See also *Chester A. Sheppard, Trustee, supra; Automatic Sprinkler Co. of America*, 27 B. T. A. 160; *Helen B. Sulzberger*, 33 B. T. A. 1093; *William H. Simon*, 36 B. T. A. 184. The separation agreement imposed no new obligation on the petitioner to pay interest on the mortgage debt. That he was already bound to do. It provided only that, instead of continuing to pay the interest directly to the mortgagee, he would pay it to his wife and she, in turn, would pay it to the mortgagee.

No part of the $225 monthly payments represented alimony or any "allowance" to the wife. She could not use the funds for any other purpose than to pay the carrying charges on the mortgaged property and to reduce the principal mortgage debt. In so doing she acted as agent or trustee for the petitioner. In legal effect the payments of the interest by the wife out of the funds furnished by the petitioner for that purpose were payments of the interest by the pe-

titioner. We are of the opinion that the petitioner is entitled to the deduction of the interest so paid during the taxable years.

As to the taxes on the property which were paid out of the same funds the same general rule applies; that is, the deduction for the taxes is allowable to the petitioner to the extent that, and only to the extent that, they were paid by the petitioner in discharge of his own liability as owner of the property. *Porter* v. *United States*, 27 Fed. (2d) 882; *Walsh-McGuire Co.* v. *Commissioner*, 97 Fed. (2d) 983; *Colston* v. *Burnet, supra.* In *Eugene W. Small*, 27 B. T. A. 1219, we said that "In order to be entitled to a deduction for taxes paid, a petitioner before us must show not only that he paid the taxes, but that the taxes were *imposed upon him* by the taxing authority." See also *Shearer* v. *Commissioner*, 48 Fed. (2d) 552.

The taxes in dispute here were assessed against the property for the years 1931 to 1934, inclusive. The taxes for 1931 and 1932 were paid in 1934 and those for 1933 and 1934 were paid in 1935.

Ordinarily, state and municipal property taxes become a personal obligation of the owner of the property when under the state laws the incidences of the tax become fixed and the tax becomes a lien upon the property. *Walsh-McGuire Co.* v. *Commissioner, supra; Colston* v. *Burnet, supra; Eugene W. Small, supra; Helvering* v. *Missouri State Life Insurance Co.*, 78 Fed. (2d) 778; *Gatens Investment Co.*, 36 B. T. A. 309.

The Illinois Revised Statutes, 1935 (Ill. State Bar Stats.) ch. 120, ¶¶ 63, 64, and 268, provide:

¶ 63. *May 1—Assessment to other than owner, legal.*] § 58. All real property in this State, subject to taxation under this Act, including real estate becoming taxable for the first time, shall be listed to the owners thereof, by such owners, their agents, county clerks, or assessors, or the county board, and assessed for the year one thousand eight hundred and eighty-one, and yearly thereafter, with reference to the amount owned on the first day of May in each year, including all property purchased on that day: * * *

¶ 64. *Owner on May 1 liable.*] § 59. The owner of property on the first day of May in any year, shall be liable for the taxes of that year. The purchaser of property on the first day of May shall be considered as the owner on that day.

¶ 268. *First lien on realty—Proceedings to enforce collection—Receiver—Procedure—Reduction of tax by court.*] § 253. The taxes upon real property, together with all penalties, interests and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and incumbrances, from and including the first day of [April] in the year in which the taxes are levied until the same are paid; * * *

See also *People ex rel. McCullough* v. *Ladies of Loretto*, 246 Ill. 403; 92 N. E. 908; *People ex rel. Pearsall* v. *Catholic Bishop of Chicago*, 311 Ill. 11; 142 N. E. 520. The respondent ruled in G. C. M.

6273, C. B. VIII–1, p. 168, that April 1 of each year is the date of the accrual of real and personal property taxes in the State of Illinois. We think that ruling is in accordance with the provisions of the statutes and the decisions of the courts of the State of Illinois.

It follows then that the taxes which accrued against the Winnetka property for the years 1931, 1932, and 1933 (the property was deeded to petitioner's wife on or about May 24, 1933) were a personal liability of the petitioner and since they were paid by him, through his wife as an agent or trustee in the same manner as was the interest on the mortgage indebtedness, they are deductible by him in his income tax returns.

The taxes for the subsequent year 1934, however, which accrued after the petitioner had conveyed the property absolutely to his wife, became her personal obligation as the owner of the property on the date of their accrual and although the petitioner paid them his liability for such taxes was based not on his ownership of the property but on his contractual relationship with his wife and his marital obligations to her. We said in *Gatens Investment Co., supra:*

It is clear from these interpretations of the statute [of Oregon] that conveyance of the land to petitioner prior to the issuance of a warrant for collection of taxes levied thereon for 1931 did not transfer to the grantee the personal liability for the tax which had been upon the former owner, as a primary liability, that of the property itself being secondary. The liability for the tax, notwithstanding the transfer, continued to be an obligation of the person who was the owner on March 1. In view of the above interpretation of the Oregon statutes by the highest court of that state, we must and do hold that the petitioner merely paid the tax of another taxpayer, and in doing so acquired no rights under the Act to a deduction for taxes paid within the taxable year. It did not pay a tax *"imposed upon the petitioner." Eugene W. Small,* 27 B. T. A. 1219, 1223. * * *

In *Walsh-McGuire Co.* v. *Commissioner, supra,* the court said:

Each person holding the land is required to pay the tax assessed thereon each year. Section 5681, General Code of Ohio. While the taxes are levied and assessed upon the real estate, they are also a personal obligation of the owner of such property. *Cincinnati College* v. *Yeatman, Aud.,* 30 Ohio St. 276, 281, 286, 287. These taxes, then, which accrued on April 12, 1931, prior to the organization of petitioner's corporation, were the obligation of petitioner's predecessor in title. The payment was made in order to lift the incumbrance from the land, and was a capital expenditure being a part of the cost of acquiring the land. *Merchants Bank Bldg. Co.* v. *Helvering,* 8 Cir., 84 F. 2d 478, 481.

In our opinion the taxes on the Winnetka property for the year 1934 are not deductible by the petitioner.

*Decision will be entered under Rule 50.*