Leroy N. Bonkowski v. Commissioner.
Bonkowski v. Commissioner
Docket Nos. 5639-67 and 2257-68.
United States Tax Court
T.C. Memo 1970-340; 1970 Tax Ct. Memo LEXIS 18; 29 T.C.M. (CCH) 1645; T.C.M. (RIA) 70340; December 16, 1970. Filed *18 Petitioner claimed rental losses in connection with certain property allegedly owned by him during the years in question. Held, petitioner is not entitled to report income and loss with respect to real property that he did not own. He also claimed dependency exemptions for his mother in each of the years 1964 and 1965, and he used head of household rates in computing his tax liability for 1965. Held. further, petitioner cannot claim his mother as a dependent in 1964 or 1965, since her gross income was $600 or more. Held, further, petitioner cannot use head of household rates in computing his tax liability for 1965. 1646 *19 Max A. Reinstein, 1501 Bosworth Ave., Chicago, Ill., for the petitioner. Nelson E. Shafer, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: The Commissioner determined deficiencies in petitioner's income tax for the calendar years 1964, 1965, and 1966 in the amounts of $308.15, $824.41, and $943.17, respectively. The issues presented for our decision are: (1) whether petitioner is entitled to deduct in each of the years in question rental losses with respect to certain real property located at 1501 N. Bosworth Avenue, Chicago, Ill. (hereinafter sometimes referred to as the Bosworth Avenue property); (2) *20 whether claimed real estate taxes, mortgage expenses, and interest with respect to the Bosworth Avenue property are deductible by petitioner; (3) whether petitioner is entitled to a dependency exemption deduction for his mother for the years 1964 and 1965; and (4) whether petitioner is entitled to use head of household rates in computing his tax liability for the year 1965. In the event we decide that petitioner is entitled to claim rental loss deductions, we must decide, in the alternative, whether he is entitled to deductions in excess of those which respondent is willing to recognize as allowable rental expenses for the Bosworth Avenue property. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Leroy. N. Bonkowski (hereinafter referred to as petitioner), who resided in Chicago as of the date of the filing of the petition herein, timely filed individual Federal income tax returns for the calendar years 1964, 1965, and 1966 with the district director of internal revenue, Chicago, Ill. During the taxable years in question and as of the date of the trial herein, *21 petitioner was employed as a draftsman by the Stewart Warner Corporation in Chicago. The Bosworth Avenue property was owned by Wladyslaw Bonkowski (hereinafter Wladyslaw), petitioner's grandfather, until his death on March 18, 1941. Wladyslaw had devised the property in question, both the land and the building thereon, to Peter Bonkowski (hereinafter Peter), petitioner's father. An appraisal report dated February 9, 1943, which was filed in the Probate Court of Cook County, Ill., indicated that the estimated age of the building was 35 years and concluded that the value of the Bosworth Avenue property was $11,750, the building having been valued at $11,000 with the remainder allocable to the land. In 1949, Josephine Bonkowski (hereinafter Josephine), petitioner's mother, divorced Peter, and a stipulation was executed by them which provided for a settlement of their respective property rights. At the time the stipulation was entered into, Peter was serving as trustee of the Bosworth Avenue property under a trust deed dated June 4, 1942; Josephine owned five-ninths of the beneficial interest in the trust; Peter owned one-ninth thereof; and Jerome Bonkowski (hereinafter Jerome), *22 a son of Josephine and Peter, owned the remaining three-ninths. Pursuant to the terms of the stipulation, Peter resigned as trustee and assigned his one-ninth beneficial interest in the trust to Josephine who thereafter, on February 1, 1950, assumed the trusteeship of the Bosworth Avenue property. Although the stipulation also stated that Peter and Josephine agreed to quitclaim their interest in certain lots owned by them in Arlington Heights and Park Ridge, Ill., to their sons "Leroy and Byron as joint tenants, and Jerome," [1] this provision of the stipulation was apparently never effectuated. Jerome assigned his three-ninths beneficial interest in the trust containing the Bosworth Avenue property to petitioner on April 11, 1950. Thereafter, pursuant to a quitclaim deed dated December 3, 1951, and recorded January 7, 1952, petitioner transferred the aforementioned three-ninths interest to his mother, Josephine, who thereby owned the entire beneficial interest in the Bosworth Avenue property. Petitioner had expended time, effort, and some money during the 1950's and early 1647 1960's *23 on the Bosworth Avenue property, although his mother, the owner of record of the property, had been reporting the rental income and expenses attributable thereto on her Federal tax returns for those years. Herman Feldman, an attorney in Chicago, suggested to Josephine that she convey, by deed, ownership of the real property in question to petitioner so that he could obtain tax benefits from the rental losses incurred with respect thereto. On January 1, 1964, Josephine signed the following statement: AFFIDAVIT I. JOSEPHINE BONKOWSKI, hereby quit-claim unto my son, LEROY N. BONKOWSKI, all my interest in the real estate commonly known as 1501 North Bosworth, Chicago, Illinois. My son shall hold this property subject to my occupying the premises for the rest of my natural life. After my death, said property is to be shared equally with my other son, BYRON BONKOWSKI. This "affidavit" was never recorded. The intended purpose in drawing up such a document was to attempt to give petitioner the opportunity to report rental income and expenses from the property in question and also to claim his mother as a dependent, thereby substantially reducing his Federal income taxes. After *24 the "affidavit" was signed in 1964, petitioner continued to maintain the building as he had done before. Josephine intended that the property in question should ultimately be owned by petitioner in view of his history of maintaining the building for her. As to her other two sons, Jerome and Byron, Josephine believed that Leroy would provide for them should the need arise. The "affidavit" was intended to provide for petitioner's management of the property. Josephine did not intend to transfer legal title to the Bosworth Avenue property in January 1964, and, therefore, she did not want to sign a deed thereto. The exact purpose of the last sentence of the "affidavit" is unclear, although it apparently was an attempt by Josephine to manifest her intention that petitioner take care of his brother Byron. No other transfers of record were made with respect to the real property in question from January 7, 1952, until July 14, 1967, on which date Josephine executed a quitclaim deed conveying her entire interest in the Bosworth Avenue property to petitioner. This deed was recorded in the Recorder's Office of Cook County, Ill., on August 1, 1967. During the period that Josephine was owner *25 of record of the Bosworth Avenue property, she secured at least two mortgages thereon, each one for $5,000. The second mortgage was obtained by her in 1965. The building in question is a three-story structure with two four-room apartments located on the basement level, a store and two four-room apartments located on street level, and one six-room and two four-room apartments located on each of the second and third floors. Petitioner claimed the following net rental losses in connection with the Bosworth Avenue property on his Federal income tax returns: 1964
1965
1966
$828
$3,614
$5,064
The following table indicates the gross rental income and specific expenses reported by petitioner for the years at issue: Josephine Bonkowski, who had reported the income and expenses from the real property in question prior to 1964, used a basis of $18,000 and a useful life of 33-1/3 years starting from the date of acquisition in computing the depreciation thereon. In 1964, petitioner began to take depreciation deductions on the Bosworth Avenue property. At that time, he claimed a useful life of 30 years on the building. Since the building was constructed in approximately *26 1908, its useful life was claimed by petitioner to be over 85 years. In connection with the aforementioned Arlington Heights and Park Ridge properties, petitioner alleged that he paid taxes thereon. The taxes were allegedly deducted as part of the Bosworth Avenue property expense. No documented evidence of the amounts and dates of such tax payments appear in the record, nor do we even know the addresses of these properties. Litigation involving the Arlington Heights property was commenced in the early 1960's by a subdividing contractor who was demanding payment for work done on the unimproved property. In addition, petitioner was defending a suit by a plumbing contractor for work done on the Bosworth 1648 Avenue property. Petitioner deducted $500 in legal fees as a 1964 rental expense of the Bosworth Avenue property on his tax return for 1964. The exact amount of the total legal fees deducted that were allocable to the litigation involving the Bosworth Avenue property is unclear. Petitioner was also involved in other litigation; there were some suits for eviction and a suit against a neighbor for damage to the Bosworth Avenue building. The dates of these lawsuits are unknown. *27 Petitioner deducted an additional $400 in legal fees as a 1965 rental expense on the Bosworth Avenue property. Of this amount, $75 was expended for the preparation of petitioner's 1964 income tax return. However, the record does not reveal the specific purposes for which the balance of the fees was expended. Petitioner purchased a 1953 Chevrolet in 1965 for $100 which he used almost exclusively in connection with maintenance of the Bosworth Avenue property. He depreciated the entire cost of this car on his 1965 income tax return. In 1966, petitioner acquired a 1960 Dodge for $400, the whole cost of which he depreciated on his 1966 tax return. The Dodge was also used almost exclusively in connection with the maintenance of the Bosworth Avenue property. In the event we hold herein that petitioner is entitled to report income or loss with respect to the Bosworth Avenue property, respondent contends that the amounts indicated in the following tables should still be disallowed for lack of substantiation: 1964
1965
1966
Gross Rental
$4,195.00
$2,945.00
$3,002.00
Income
Less:
$ 84.00
Mortgage
Expense
Mortgage
23.00
133.00
258.00
Interest
Real Estate
782.00
767.00
768.86
Tax
Fuel and
1,480.00
1,538.00
1,848.71
Utilities
Advertising
384.00
369.00
214.00
Water
65.00
57.00
73.24
Building
12.00
12.00
11.50
Inspection
Legal Fees
500.00
400.00
and Court
Costs
Fire
62.00
61.67
Insurance
Management
50.00
50.00
Expense
Car (License
56.00
105.54
and Operating
Expenses)
Depreciation
1,166.00
1,166.00
1,166.00
(Building) [2]
$4,644.00
$4,557.52
Deduct:
446.20
422.18
414.32
Personal
Use [3]
$4,015.80
$4,**1.3*
$4,143.*0
Depreciation
75.00
1,013.67
1,313.67
(Other)
Repairs
1,032.00 [4]
1,324.00
2,611.10
5,122.80
6,559.49
8,067.97
Net Income or
[5][ 927.80)
[3,614.49)
[5,065.97)
(Loss)
*28 ANALYSIS
OF
DEPRECIATION
1964
1965
1966
Description
Claimed
Not
Claimed
Not
Claimed
Not
Allowable
allowable
allowable
Building
$ 949.00
$949.00
$1,060.00
$1,060.00
$1,060.00
$1,060.00
Gas Heater
75.00
75.00
75.00
75.00
75.00
75.00
Store Front
416.67
416.67
416.67
416.67
Washer &
122.00
122.00
122.00
122.00
Dryer
Bathrooms
300.00
300.00
300.00
300.00
Automobile
100.00
100.00
400.00
400.00
$1,024.00
[6] $1,982.00
[6] $2,374.00
*29 ANALYSIS
OF REPAIRS
(TENANTS'
EXPENSES)
1964
1965
1966
Description
Claimed
Not
Claimed
Not
Claimed
Not
allowable
allowable
allowable
Floor tile
$ 329.65
$329.65
Suspended
597.88
597.88
ceiling
Hardware
$ 45.00
0
$ 78.00
0
219.16
0
Window sash -
137.00
0
398.80
0
43 sets
Light fixtures
338.30
338.30
- 10
Electrical
242.00
$182.00
464.00
$330.00
40.48
0
Paint
86.00
0
73.00
0
61.10
0
Glass
18.49
0
Refrigerator -
40.00
0
149.79
149.79
replacement
Refrigerator -
48.00
0
30.00
0
57.85
0
repair
Rugs
52.00
0
Furniture
320.00
132.00
150.00
150.00
244.06
0
Water heater
5.15
0
parts
Rugs -
16.00
0
25.65
0
cleaning
Misc. supplies
60.00
0
102.00
0
72.77
0
Storm window
6.00
0
55.00
0
Lumber
200.00
200.00
Plumbing
23.00
0
35.00
0
Gas range
50.00
0
Gas heater
11.00
0
Misc. repair &
101.00
0
replacements
$1,048.00
$1,324.00
[7] $2,611.10 1650 ANALYSIS OF OTHER EXPENSES
1964
1965
Description
Claimed
Not
Claimed
allowable
Mortgage- expenses
$ 84.00
Mortgage - Interest
$ 23.00
0
133.00
Real estate taxes
782.00
$ 59.22
767.00
Fuel and utilities
1,480.00
0
1,476.00
Advertising
384.00
0
369.00
Telephone
62.00
Inspection
12.00
0
12.00
Water
65.00
0
57.00
Insurance
62.00
Management expense
50.00
0
Auto license
26.00
Auto - opera- ting expense
30.00
Legal fees and construction costs
500.00
500.00
400.00
$3,296.00
[8] $3,578.00
Less: Personal (1/10 or 1/11)
329.00
325.00
$2,967.00
$3,253.00
*30 ANALYSIS OF OTHER EXPENSES
1966
Description
Not
Claimed
Not
allowable
allowable
Mortgage- expenses
0
Mortgage - Interest
0
$ 258.00
0
Real estate taxes
$ 22.90
768.86
$39.34
Fuel and utilities
0
1,786.59
0
Advertising
0
214.00
0
Telephone
0
62.12
0
Inspection
0
11.50
0
Water
0
73.24
0
Insurance
0
61.67
0
Management expense
50.00
0
Auto license
0
48.50
0
Auto - opera- ting expense
0
57.04
0
Legal fees and construction costs
400.00
[9] $3,388.52
Less: Personal (1/10 or 1/11)
307.52
$3,081.00
Opinion Petitioner reported income and expenses incurred in connection with certain rental property during the years 1964, 1965, and 1966. Respondent disallowed the resulting net rental losses with respect thereto on the ground that petitioner did not own the property in question. Petitioner also claimed his mother as a dependent for the years 1964 and 1965 and used head of household tax rates in computing his tax liability for 1965. Respondent disallowed the dependency exemptions and determined, therefore, that *31 petitioner was not entitled to head of household status. 1. Bosworth Avenue Property Respondent's position on this issue was concisely stated on brief: Petitioner did not own the Bosworth Avenue property during the years in question * * * and may not report the income or loss therefrom. * * * Petitioner, on the other hand, contends that he is entitled to the rental loss deductions in question because he allegedly became owner of the Bosworth Avenue property on January 1, 1964, the date on which his mother signed an "affidavit" which petitioner alleges was an instrument legally sufficient to transfer title to him. It is clear that petitioner's mother, by conveying the property to him, could have conferred tax benefits on him. However, the earnest desire to confer such benefits is not enough to effectuate such a "gift." One must pay a price therefor, viz., divest oneself of ownership and effectively transfer that ownership to the taxpayer wishing to utilize the tax benefits. Therefore, the underlying question to be resolved herein is whether the "affidavit" dated January 1, 1964, effectively conveyed ownership of the property in question to petitioner. Respondent contends *32 that it did not, and we must agree with him on this issue. In Illinois, the words "'convey and quitclaim' generally are sufficient to convey title. * * *" Midwest-Radiant Corporation v. Hentze, 171 F. 2d 635 (C.A. 7, 1948), certiorari denied 336 U.S. 952 (1949); Ill. Rev. Stat. ch. 30, sec. 9 (1967). These words were not used in the "affidavit" signed by Josephine. However, the omission of such words is not fatal to the 1651 transfer of title. Where these words are not used, it must appear from the language used that it was the intention to convey title, and the language must have that effect. Moreover, we can examine factors such as the circumstances surrounding the transaction, the situation of the parties, and the goal sought in attempting to ascertain the intention of the maker of an instrument purporting to transfer ownership. Law v. Kane, 384 Ill. 591, 52 N.E. 2d 212 (1943); Adams v. Gordon, 265 Ill. 87, 106 N.E. 517 (1914); and D. M. Good-willie Co. v. Commonwealth Electric Co., 241 Ill. 42, 89 N.E. 272 (1909). We must also consider the practical construction which the parties themselves place upon the *33 instrument in question. Law v. Kane, supra. From an examination of the entire record, we are convinced and hold that petitioner's mother, Josephine, did not want to transfer ownership of the Bosworth Avenue property to petitioner as of January 1, 1964. One fact which weighs heavily in this determination was that Josephine secured a mortgage on the property in 1965. We cannot fathom why she would do this unless she still considered herself the owner of the property. Furthermore, the transfers with respect to the Bosworth Avenue property made in the early 1950's were effectuated by properly executed deeds. We are also aware that Josephine was hesitant about conveying title to petitioner even though she knew that he was managing the rental property, because of her concern for the welfare of her other two sons. Josephine appears to have been placed on the horns of a dilemma, viz., she wanted petitioner to own the property, which appears to have been her only substantial asset, yet she wanted Jerome and Byron to be provided for as well. Upon the advice of her attorney, Herman Feldman (hereinafter Feldman) she executed the "affidavit." Feldman testified that he knew that *34 the "affidavit" would not transfer title to petitioner, but he felt it was sufficient to enable petitioner to obtain tax benefts by reporting the rental losses on the property. The "affidavit" was in no sense intended to serve as a deed, which is evidenced by the fact that it was never recorded. Josephine finally agreed and intended to divest herself of ownership of the Bosworth Avenue property in July 1967, at which time she executed a deed to her son, petitioner, which was properly recorded. However, this transfer came too late to affect the years before us. Since petitioner did not own the property in question during the years at issue, we hold that he was not entitled to report income or loss with respect thereto. [10]
As to the real estate taxes and mortgage interest and expenses, these items are generally deductible by the person on whom the liability therefor is imposed. Magruder v. Supplee, 316 U.S. 394 (1942); Caroline T. Kissel, 15 B.T.A. 1270 (1929); Edward C. Kohlsaat, 40 B.T.A. 528 (1939); *35 section 1.164-1(a), Income Tax Regs.
In Illinois, state and municipal property taxes become a personal obligation of the owner of the property. Ill. Ann. Stat. ch. 34, sec. 508(a) (Smith-Hurd 1970). Pearsall v. Catholic Bishop of Chicago, 311 Ill. 11, 1942 N.E. 520 (1924); McCullough v. Ladies of Loretto, 246 Ill. 403, 92 N.E. 908 (1910). Since petitioner's mother was the owner of the property, the real estate taxes were imposed upon her and deductible by her, not petitioner. Edward C. Kohlsaat, supra.Furthermore, we have no evidence which indicates that anyone other than Josephine was liable on the mortgages which she secured on the property in question. Therefore, petitioner was not entitled to deduct mortgage interest and expenses with respect thereto. At trial and on brief, petitioner claimed that part of the real estate taxes he deducted in the years at issue were attributable to two lots located in Arlington Heights and Park Ridge. However, on his tax returns, these alleged items were deducted on the schedule for the Bosworth Avenue property. Petitioner could not recall the exact amount of the taxes paid nor did he produce any documented *36 proof of such payment. Furthermore, we are not sure who owned these properties. In view of the vague and general testimony on this matter, we are constrained to hold that petitioner has not met his burden of proof with respect thereto, and accordingly, the deductions were properly disallowed. As to the disallowance of attorney's fees and court costs for the years 1964 and 1652 1965, respondent has agreed that $75 of the claimed legal fees was for the preparation of petitioner's 1964 income tax return. Therefore, that amount was deductible. [11] Section 212(3). As to the disallowance of attorney's fees, the record is far from clear as to the exact amount of the fees and the purposes for which the fees were expended. We do not know the amount of the fees incurred with respect to the Bosworth Avenue property or the Arlington *37 Heights property. Furthermore, we are not sure of the years in which the fees were paid. In view of the unsatisfactory state of the record, we are constrained to hold that the disallowance of $500 in legal fees in 1964 and $325 in legal fees in 1965 was proper. Moreover, since petitioner did not own the Bosworth Avenue property and since we do not know if he was the owner of the Arlington Heights property, he would not, in any event, be entitled to deduct legal fees incurred in connection therewith. 2. Dependency Exemption Deduction Petitioner could not claim his mother as a dependent for the years 1964 and 1965, if her gross income in each of those years was $600 or more. Section 151(e) (1)(A). We hold that petitioner was not entitled to the dependency exemptions claimed since his mother's gross rental income from the Bosworth Avenue property alone was $4,195 and $2,945 in 1964 and 1965, respectively. 3. Head of Household Rates Petitioner was not entitled to use head of household tax rates in computing his tax liability for 1965, because he did not maintain a household in that year which constituted the principal place of abode of a person for whom he was entitled to a deduction *38 under section 151. Section 1(b) (2)(A) and (B). In order to reflect the conclusions reached herein, Decisions will be entered for the respondent. Footnotes
1. Peter and Josephine had three sons by their marriage: Leroy, Byron, and Jerome.↩
2. The basis used for computing depreciation (excluding itemized improvements) was $35,000. The indicated useful life was 30 years commencing on the alleged date of acquisition of the property by petitioner, viz., January 1, 1964. ↩
3. Petitioner deducted one-tenth as personal use in 1964, whereas he deducted one-eleventh as personal use in 1965 and 1966, respectively. ↩
4. Petitioner reported $1,048 in his return but only deducted $1,032. ↩
5. Discrepancies exist between these figures and the rental losses claimed by petitioner in the amounts of $828, $3,614, and $5,064 for the years 1964, 1965, and 1966, respectively.↩
6. Although the individual items claimed for 1965 and 1966 total $2,073.67 and $2,373.67, respectively, petitioner only deducted the total amounts indicated.↩
7. Actual figures total $2,611.13↩
8. Actual figures total $3,478.00. ↩
9. Actual figures total $3,391.52.↩
10. See Preston Wilson, T.C. Memo. 1961-135↩; Solomon N. Seale, a Memorandum Opinion of this Court dated Jan. 18, 1950.
11. In his notice of deficiency for 1965 respondent disallowed a claimed rental loss of $3,614 on the Bosworth Avenue property. The $75 expended for the preparation of petitioner's 1964 income tax return is allowable as an itemized deduction. However, respondent allowed petitioner a standard deduction of $714.57 in lieu of itemized deductions totaling $440.↩